MITCHELL *v.* METAL-ASSEMBLIES, INC.

1. WORKMEN'S COMPENSATION—LOSS OF 4 FINGERS—ADDITIONAL COMPENSATION—INDUSTRIAL LOSS OF HAND—EVIDENCE.

Injured employee would not be entitled to compensation for the industrial loss of a hand, where he had been paid for loss of 4 fingers of right hand and evidence is undisputed that he had suffered no disablement beyond that which commonly follows such an amputation (CLS 1961, § 412.10).

2. SAME—EXTENT OF DISABILITY—FACT QUESTION.

Question of loss and extent of disability is a question of fact, and findings of workmen's compensation appeal board in such matter will not be disturbed on appeal, where the facts are in dispute.

3. SAME—EXTENT OF DISABILITY—QUESTION OF LAW.

Record indicating facts as to loss and extent of disability of injured employee are undisputed presents question of law determinable by the Court of Appeals on appeal from workmen's compensation appeal board.

4. SAME—SPECIFIC INJURIES.

The right to workmen's compensation and the amount thereof for specific injuries are purely statutory (CLS 1961, § 412.10).

5. COURTS—COURT OF APPEALS.

The task of the Court of Appeals is to interpret and apply the law as it has been set forth by the Supreme Court in its decisions.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation §§ 287, 288.
[2, 3] 58 Am Jur, Workmen's Compensation § 461.
[4] 58 Am Jur, Workmen's Compensation § 2.
[5] 20 Am Jur 2d, Courts § 183.
[6] 50 Am Jur, Statutes § 228.

6. Constitutional Law—Amendment of Statutes—Legislature—
   Court of Appeals.
   Change in the workmen's compensation act as interpreted by the
       Supreme Court is the province of the legislature, not of the
       Court of Appeals.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 February 8, 1966, at Detroit. (Docket No. 909.) Decided April 26, 1966. Leave to appeal granted by Supreme Court July 21, 1966. See 378 Mich 724, 379 Mich 368.

David Mitchell presented a claim for workmen's compensation against Metal-Assemblies, Inc., and Exchange Casualty & Surety Company (in liquidation) for a specific loss of four fingers. Compensation awarded. On application for adjustment of claim, compensation awarded for industrial loss of right hand. Defendant appeals. Affirmed by appeal board. Defendant appeals. Reversed.

*Miley & Fox* (*John E. Miley,* of counsel), for plaintiff.

*Levin, Levin, Garvett & Dill* (*Edward M. Miller,* of counsel), for defendant Metal-Assemblies, Inc.

WATTS, J. This is an appeal from the workmen's compensation appeal board.

The facts in the case are simple: On August 19, 1960, plaintiff David Mitchell lost the 4 fingers of his right hand. Stubs of about 1/2 inch were left of both the index and little fingers. He was operating a punch press at the time of the accident, and was in the course of his employment with the defendant Metal-Assemblies, Inc. Part of the medical testimony by the only medical witness indicates that the thumb and palm of the hand were not damaged:

"*Q.* Now, Doctor, did you have occasion to examine David Mitchell?

"*A.* Yes, I examined him after his accident.

"*Q.* That was on what date?

"*A.* I don't recall the day. It was, I'd say, either late October or early November of last year.

"*Q.* Would that have been specifically on November 10, 1962, as indicated by your medical report?

"*A.* Yes.

"*Q.* Was that the first time that you saw David Mitchell?

"*A.* Yes.

"*Q.* Will you please tell us what your examination of David Mitchell disclosed?

"*A.* Well, it showed that he had had this amputation of the 4 fingers. There was about a half inch stump of the right index finger which was remaining and also of the little finger. The thumb was not injured. The flexion and extension were normal. He was able to—opposition to the index finger was normal. He was also able to oppose the — to abduct the thumb to the area of the little finger. He was able to flex and extend his palm. There was no swelling and evidently no pain.

"*Q.* Now, Doctor, the palm, does that remain intact and undamaged?

"*A.* Yes, it does."

The plaintiff David Mitchell applied for and received the statutory maximum ($46.68 per week for 109 weeks) for the loss of all 4 fingers, under section 10 of part 2 of the workmen's compensation law, CLS 1961, § 412.10 (Stat Ann 1960 Rev § 17.160).[1]

On June 13, 1962, the plaintiff made application for a hearing and adjustment of claim, contending "industrial loss of use of right hand". The defendant Metal-Assemblies, Inc., defended, denying that the plaintiff had suffered the said specific loss.

---

[1] See, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.160).

Testimony was taken on October 9 and November 16, 1962, and on January 28, 1963.

The testimony indicated and was undisputed that plaintiff had suffered no different nor greater loss than the loss of 4 fingers and the disability and impairment which must always follow such a loss. It was shown that plaintiff had returned to work and performed satisfactorily at the same job he had held before his accident, and that while it was obvious that he could not use his hand in the same manner as an uninjured worker, he could and did use it for grasping, holding and lifting objects, driving a lift truck, writing, and that he could with the aid of another worker operate a punch press.

The referee at the hearing level found that the plaintiff had lost the industrial use of his right hand, and the workmen's compensation appeal board affirmed.

The question on appeal is: Did the workmen's compensation appeal board err in concluding that the plaintiff had suffered industrial loss of his hand, where in this particular situation, 4 fingers had been amputated, the thumb and palm remained whole, physically and functionally, and the evidence is undisputed that the plaintiff had suffered no disablement beyond that which commonly follows such an amputation. We hold that it did so err.

While plaintiff argues on appeal that the question of loss and extent of disability is a fact question and cites cases supporting this proposition, we are forced to the conclusion that this position is only tenable where the facts regarding the injury are in dispute. We have thoroughly reviewed the record and such is not the case here. The question becomes one of law and, therefore, one which is properly before this Court.

Further testimony by the medical witness was as follows:

"*Q. (By Mr. Leib)* Doctor, as a result of your examination of David Mitchell, do you have an opinion based upon a reasonable medical certainty as to whether or not he has lost the industrial use of his right hand?

"*Mr. Miley:* I'll object, if Your Honor please. That's a question for the department to answer and is not in the province of this witness.

"*The Referee:* From a medical point of view it is. I have to answer it from a legal point of view. I'll take his answer.

"*A. I do not think he's lost the industrial use of his hand.*

"*Q.* Now, Doctor, can you tell us whether or not the right thumb remains intact?

"*A.* Yes.  *  *  *

"*Q.* Any damage at all, Doctor, to the metacarpals of Mr. Mitchell's right hand?

"*A.* No.

"*Q.* Any damage to the carpals of his right hand?

"*A.* The carpals are the wrist. No, no carpals—no damage to the carpals.

"*Q.* No damage to the carpals?

"*A.* No.

"*Q.* Any damage to the ulna or the radius of the right hand?

"*A.* No. The right arm, that would be forearm.

"*Q.* Or the right arm. Is there any stiffening or ankylosis of the thumb?

"*A.* No, there is none.

"*Q.* Insofar as you're concerned then, Doctor, the thumb remains uninjured?

"*A.* Yes.

"*Q.* Did you observe the plaintiff articulate the thumb so that he was able to touch the right index finger?

"*A.* Yes." (Emphasis supplied.)

Further along in the transcript is the following testimony by the medical witness:

"*Q. (By Mr. Leib)* Is Mr. Mitchell's disablement in the right hand any different than that which would naturally follow from the amputation that he had?

"*A.* No.

"*Q.* It's no different, is that correct?

"*A.* No."

In the instant case, the controlling decision is *Hlady* v. *Wolverine Bolt Company* (1949), 325 Mich 23. This case is indentical to the instant case. We can do no better than to quote from the *Hlady Case* (p 25):

"The sole question presented is whether the commission was justified, under the circumstances of this case, in awarding compensation to plaintiff for the loss of her right hand notwithstanding she had already been paid in full the specific award for the loss of the 4 fingers of that hand.

"The record is devoid of testimony tending to prove that plaintiff has suffered any different or greater loss than normally results from the amputation of 4 fingers of a hand. Notwithstanding plaintiff claimed that the amputation of her fingers resulted in disability 'sequelae' and 'general disability,' the commission found none except disability which normally follows such amputations. * * *　.

"The right to compensation and the amount thereof for specific injuries are purely statutory. To award plaintiff compensation for loss of a hand under this record would be in total disregard of the controlling statute. (Citing statute.) As a matter of law the commission's award to plaintiff for the loss of a hand was erroneous, because there was no testimony that plaintiff's injury was other than the loss of 4 fingers of her right hand which resulted in no more than the normal impairment of industrial use which must always follow such amputations, or at least naturally and commonly results."

Plaintiff, on appeal, urges that the *Hlady* decision is no longer applicable as it has been modified by subsequent decisions, and they primarily cite *Shumate* v. *American Stamping Company* (1959), 357 Mich 689, and *Lentz* v. *Mumy Well Service* (1954), 340 Mich 1, for the proposition that the *Hlady* decision has been modified and that the finding of fact by the workmen's compensation appeal board that a plaintiff's hand was industrially useless was binding upon the appeal board, however, in the first case, the hand had atrophied, and in the second, there was evidence of impairment to the use of the thumb and palm. Furthermore, in both cases impairment above and beyond the loss of 4 fingers was sustained by the record.

We have thoroughly combed the cases subsequent to *Hlady* and fail to find that they in any way alter the law in Michigan as to the precise point on appeal to this Court.

We might also comment on a statement made by the referee at the hearing level and quoted in defendant's brief:

"I have resolved this very close case in plaintiff's favor because without the benefit of his completely useful left hand I think that the remainder of his right hand would be well nigh useless. The *Hlady Case* decided on May 10, 1949, is factually almost identical but I doubt that as of now our Supreme Court would follow it."

We may only say that the ultimate test of this statement lies not with this Court but with the Supreme Court of the State of Michigan. We do not presume to determine what law might be set forth by that Court which brought this Bench into being. Our task is to interpret and apply the law as it has been set forth by that Court in its decisions.

In the instant case, the type of injury and the compensation for such an injury are controlled by part 2, § 10 of the Michigan workmen's compensation law, *supra,* promulgated by our legislature, and by the judicial interpretations of that statute as manifested in the case law. While it might seem harsh to find that a man who has lost 4 fingers of his right hand has not, in absence of evidence of any greater injury, lost the industrial use of that hand, such is the law. To change the law is the province of the legislature, not of this Court.

Order of the workmen's compensation appeal board is reversed.

J. H. GILLIS, P. J., and FITZGERALD, J., concurred.