METRO HOMES, INC., *v.* CITY OF WARREN

1. MUNICIPAL CORPORATIONS—ORDINANCES—SEWER TAP CHARGE—RETROACTIVITY.

   Enactment on April 20, 1965, of a retroactive city ordinance providing that a sewer tap charge shall be paid with respect to all structures, regardless of date of construction, which, after January 13, 1959, have been or will be connected to sewage facilities *held*, not to bar the vested right of a group of builders to recover money collected under a resolution of January 13, 1959, which was held unconstitutional by the Supreme Court, providing a sewer tap charge applicable to all subsequently-built structures connected to the sewage system but exempting existing structures from the charge.

2. APPEAL AND ERROR—SUPREME COURT—CASE LAW—OVERRULING—MUNICIPAL CORPORATION—ORDINANCE.

   Overruling of a Supreme Court decision by the Supreme Court is not for the Court of Appeals to anticipate, and the very ordinance held unconstitutional by the Supreme Court should not in later litigation be held constitutional by the Court of Appeals by analogy to a similar ordinance held constitutional in earlier litigation.

3. APPEAL AND ERROR—REHEARING—DENIAL.

   Denial of a rehearing is not determinative of the merits presented by an application for rehearing.

4. CONSTITUTIONAL LAW—DUE PROCESS—RETROACTIVE LEGISLATION—VESTED RIGHTS.

   Considerations of due process limit the reach of retroactive legislation that would otherwise impair vested rights.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Municipal Corporations § 515.
[2] 20 Am Jur 2d, Courts § 201.
[3] 5 Am Jur 2d, Appeal and Error § 984.
[4, 6, 7] 16 Am Jur 2d, Constitutional Law §§ 416–419.
[5] 51 Am Jur, Taxation § 16.

5. TAXATION—REVENUE BOND ACT—RATES.

Rates authorized by the revenue bond act of 1933 are to be regarded as charges for the use of public improvement facilities and services, not as taxes (MCLA § 141.101 *et seq.*).

6. CONSTITUTIONAL LAW—DUE PROCESS—MUNICIPAL CORPORATIONS—PAYMENT—PAST ACT.

Due process requires that a liability to a municipal corporation for payment of charges for performance of an act may not be imposed on account of a past act if an enforceable obligation was not occasioned when the act took place.

7. MUNICIPAL CORPORATIONS—MONEY—RETENTION.

A city should not be permitted to retain any part of unconstitutionally-gained funds.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 March 6, 1969, at Detroit. (Docket No. 5,803.) Decided October 29, 1969. Leave to appeal denied January 26, 1970. See 383 Mich 761. Certiorari denied by Supreme Court of the United States June 15, 1970.

Complaint by Metro Homes, Inc., a Michigan corporation, Richter Construction Co., a Michigan corporation, and Seyburn Building Co., a dissolved Michigan corporation, against the City of Warren, a municipal corporation, and its administrative officials for the return of money collected as sewer tap charges. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Ginn & Kramer, Irvin H. Yackness, Nussbaum, Stacey & Munger,* and *Bodman, Longley, Bogle, Armstrong & Dahling* (*Michael B. Lewiston,* of counsel), for plaintiffs.

*Emil E. Cardamone,* City Attorney, and *Miller, Canfield, Paddock & Stone* (*George E. Bushnell, Jr.,* and *Gilbert E. Gove,* of counsel), for defendants.

Before: McGregor, P. J., and Fitzgerald and V. J. Brennan, JJ.

V. J. Brennan, J. This appeal involves a municipal corporation's effort to retain money collected under an unconstitutional resolution.

On January 13, 1959, the Warren city council created by resolution a "sewer tap charge" applicable to all subsequently built structures connected to the city's sewage system. Existing structures were exempted from the charge, however, and certain builders therefore challenged the resolution's[1] constitutionality, seeking recovery of the fees they had paid under it. This litigation culminated in the decision titled *Beauty Built Construction Corporation* v. *City of Warren* (1965), 375 Mich 229, where the Supreme Court concluded that existing but unconnected structures and structures yet to be built are alike regarding the future use of the sewage facilities, and therefore held that the 1959 resolution, by exempting the former structures from the charge, denied those persons building after January 13, 1959, equal protection of law.

On April 14, 1965, five days after the decision in *Beauty Built* was rendered, a group of builders who had paid the invalid charges, but were not parties to the *Beauty Built* suit, commenced the present class action, on behalf of themselves and all other builders similarly situated,[2] to recover the approximately $5,000,000 the class had paid as sewer tap charges.[3] Hoping to retain the fees it had collected,

---

[1] Which we will term the 1959 resolution.

[2] This class will be designated the *Metro* class.

[3] While this suit was in progress below, the case of *Wheeler* v. *Metro Homes, Inc.*, was begun. The plaintiffs were a class composed of those persons who had purchased structures upon which a sewer tap charge had been paid. The defendants were the *Metro* class and the *Beauty Built* plaintiffs. The *Wheeler* class sought to recover all tap charges that the defendants might receive from the

the Warren city council enacted the following ordinance on April 20, 1965:

"*Section 1.* There shall be paid with respect to all structures, regardless of date of construction, which, after January 13, 1959, have been or will in the future be connected to the sanitary sewage facilities of the combined water and sewer system of the city of Warren, a sewer tap charge in the amount as provided in and in accordance with the terms of Ordinance No. 58–1 and the resolutions of January 13, 1959, and December 27, 1960, referred to in the preamble hereof, and all provisions of the said ordinance and resolutions to the contrary are hereby rescinded and repealed * * *

"*Section 2.* In all other respects the aforesaid Ordinance No. 58–1 and resolutions of January 13, 1959 and December 27, 1960, and all actions taken pursuant thereto not in conflict herewith be and the same hereby are ratified, readopted and reaffirmed."

The city of Warren then filed an application for a rehearing of *Beauty Built,* claiming that this ordinance[4] "cured" the invalid resolution. The Supreme Court denied the rehearing on May 13, 1965, and the city of Warren thereafter paid approximately $780,-000 toward the *Beauty Built* claims, which, with minor exceptions, have now been satisfied.

Meanwhile, the city of Warren interposed the 1965 ordinance as a defense to this action. After issue was joined, the *Metro* plaintiffs moved for summary judgment on the ground that no material issue of fact existed and that they were entitled to a judgment in their favor as a matter of law. The trial court granted the motion and ordered the city to pay into court all fees collected from the *Metro*

city of Warren. The plaintiff and defendant classes in *Wheeler* reached a settlement which was approved by the trial court on September 18, 1967. .

[4] Which we will term the 1965 ordinance.

class. The city of Warren, along with the various officials joined in the action, appeals.

I.

Each side presents an argument that would not require this Court to decide what effect, if any, should be given to the 1965 ordinance, if either of these arguments were dispositive of this controversy.

The defendants urge us to follow the decision of *Seltzer* v. *Sterling Township* (1963), 371 Mich 214, rather than that of *Beauty Built,* and to declare the 1959 resolution valid, with or without the amendatory legislation. In *Seltzer,* the Supreme Court held to be constitutional an ordinance imposing privilege fees on certain structures connected to the water system after the adoption of the ordinance. The ordinance provided:

"There shall be established a privilege fee for water and sewer service, which fee is to be used for capital improvements in the Sterling township water and sewer system. Said fee shall be in the amount of $150 privilege fee for water service, and $200 privilege fee for sewer service, such fee to be paid for each residence or building to be connected to the Sterling township water and sewer system *at the time of application for a building permit.* (Emphasis supplied.) Sterling township ordinance no 34 (May 1, 1956).

The defendants maintain that this valid ordinance works the same discrimination as that accomplished by the language of the 1959 resolution: the valid ordinance requires payment at the time of application for a building permit; building permits are required only for structures yet to be built; therefore structures in existence on the effective date of the ordinance are exempt from the fee, even though they

are subsequently connected. Yet, the defendants point out, the Supreme Court sanctioned this discrimination in *Seltzer:*

"The ordinance is not limited to a class after its effect. It applies to all parties building after the effective date of the ordinance."

Whether these decisions are reconcilable or not, *Beauty Built* settles the question of the 1959 resolution's validity, for *Beauty Built* involved the same resolution, and it is not for this Court to anticipate the Supreme Court's overruling of that decision. See *Mitchell* v. *Metal-Assemblies, Inc.,* (1966), 3 Mich App 143; *Abendschein* v. *Farrell* (1968), 11 Mich App 662. We must assume that the 1959 resolution is unconstitutional.

The plaintiffs argue that the denial of a rehearing in *Beauty Built* is dispositive of the question whether the 1965 ordinance is a complete defense to this action: the defendant city stressed the allegedly curative effect of the 1965 ordinance in the brief submitted with the application for a rehearing; despite the 1965 ordinance, the Supreme Court did not disturb its decision in *Beauty Built.*

Although the trial court accepted this argument, we do not find it persuasive, since it presupposes that a denial of rehearing is determinative of the merits presented by a rehearing application, which it is not. See *People* v. *Berry* (1968), 10 Mich App 469; Comment, *Rehearing in the Michigan Supreme Court,* 12 Wayne L Rev 461 (1966). It therefore remains to be decided whether the city of Warren should be permitted to defeat the claims of the *Metro* class by its enactment of the 1965 ordinance.

## II.

The defendants contend that since the invalidity and unfairness of the 1959 resolution lie exclusively in its failure to require a fee for the connection of structures standing before its enactment, the 1965 ordinance, by retroactively extending the fee requirement to all structures connected to the system after January 13, 1959, eliminates the unfairness of the 1959 resolution and, consequently, the reason for recovery of the tap-in fees. In other words, it is alleged, the sewer tap charge is itself basically valid, and the exemption is merely an irregularity that has been cured. The plaintiffs, on the other hand, contend that because of its invalidity, the 1959 resolution is void *ab initio,* and that they possess a vested right to recovery. Although the plaintiffs advance little reason to explain why their cause should not be divested by the retroactive ordinance, we believe that their assertion is correct.

Considerations of due process limit the reach of retroactive legislation that would otherwise impair vested rights. *Hansen-Snyder Company* v. *General Motors Corporation* (1963), 371 Mich 480; *Ramey* v. *Michigan Public Service Commission* (1941) 296 Mich 449; *Briggs* v. *Campbell, Wyant & Cannon Foundry Company* (1966), 2 Mich App 204, *aff'd* 379 Mich 160 (1967). Before we turn to the considerations present here, it should be noted that the term "vested" is conclusory. Its use affords no aid to analysis and can only reflect the determination that the legislation should not be permitted to impair the interest in question. See *Wylie* v. *City Commission of the City of Grand Rapids* (1940), 293 Mich 571; *Leedom* v. *International Brotherhood of Electrical Workers Local 108 AFL-CIO* (1960), 107 App DC 357 (278 F2d 237).

To avoid the consequences of the 1965 ordinance's retroactive features, the defendants analogize the sewer tap charge to special assessments, which may be constitutionally levied for a public work already done. *Wagner, Inc.* v. *Leser* (1915), 239 US 207 (36 S Ct 66; 60 L Ed 230); *Gray* v. *Dingman* (1937), 279 Mich 62. Whatever the similarity between special assessments and the charges in question, the revenue bond act of 1933[5] is the source of authority for the 1965 ordinance. This Court has had occasion in the past to consider the nature of the rates authorized by this act,[6] and they are to be regarded as charges for the use of public improvement facilities and services, not as taxes. Accordingly, these charges must be sustained, if they are to be sustained at all, as charges for past acts of tapping which, due to the invalidity of the 1959 resolution, were not subject to an enforceable charge when they occurred.

Such a charge is impermissible, however, for a liability may not be imposed on account of a past act if an enforceable obligation was not occasioned when the act took place. *Forbes Pioneer Boat Line* v. *Board of Commissioners* (1922), 258 US 338 (42 S Ct 325; 66 L Ed 647). This rule of due process may be subsumed under the principle that retroactive

[5] MCLA § 141.101 *et seq.* (Stat Ann 1958 Rev and Stat Ann 1965 Cum Supp § 5.2731 *et seq.*).

[6] *Smith* v. *Township of Norton* (1965), 2 Mich App 17. There, this Court quoted with approval from Chermak, The Law of Revenue Bonds (1954), pp 162, 200:

"Although the charges made for services rendered have been compared with special assessments levied on the property specially benefited, care should be taken that the charge made for the service is not in the nature of a special assessment which involves the power of taxation. Such charge should rest on contract for use, unless statutory requirements covering special assessment procedures are fully met. Where the charge is made solely for use, it is not a tax.

"The rates, of course, must be based upon use and not special benefit or other similar criteria, unless special assessment proceedings are accepted."

legislation may not impair vested rights. Its application is limited to those cases where it is concluded that the reason underlying the immunity from liability compels the continuance of the immunity.

"[T]he prevailing judgment of the profession has revolted at the attempt to place immunities which exist only by reason of some slight technical defect on absolutely the same footing as those which stand on fundamental grounds. * * * [M]ultitudes of cases have recognized the power of the legislature to call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seemed small.

"In some such cases there has been at an earlier time an enforceable obligation, in others there never has been one, but in both classes the courts have laid hold of a distinction between the remedy and the substantive right, or have said that 'a party has no vested right in a defense based upon an informality not affecting his substantial equities' Cooley, Const. Lim. (6th ed.) 454, or that 'there is no such thing as a vested right to do wrong,' * * * or have called it curing an irregularity, * * * or have dwelt upon the equities, meaning the moral worth of the claim that was preserved, or by one device or another have prevented a written constitution from interfering with the power to make small repairs which a legislature naturally would possess." *Danforth* v. *Groton Water Company* (1901), 178 Mass 472 (59 NE 1033).

The *Metro* class' immunity from liability under the 1959 resolution is not based on what might be called a technicality; and, at the same time, the class is not asserting a right to a windfall on a service for which it might otherwise be willing to pay. The 1959 resolution is invalid because it singles out the *Beauty*

*Built* plaintiffs and *Metro* class to finance the expansion of a sewage system that others were to use also. The right to recover the tap fees is designed to ensure that those who govern a municipality treat its citizens fairly. If municipal corporations were permitted to keep money gained in violation of constitutional principles, there would be little in the Federal and Michigan Constitutions to deter them from favoring special interests with legislation similar to that in question.

It seems to us that the 1965 ordinance not only fails to eliminate the reason for recovery, but also fails to eliminate the unfairness created by the 1959 resolution. Essential to the elimination of that unfairness is the extension of the sewer tap charge to the previously exempt structures.[7] Yet the rule preventing the city from reimposing a charge on the *Metro* structures also prohibits this extension, although the reasons underlying these two applications of the rule are different.

Retroactive legislation is often unfair because it detrimentally alters rights gained in reliance upon the prior law.[8] Thus, a person cannot be made to

---

[7] By the city's admission, no fees have been collected for the connection of these structures.

[8] The following is from Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv L Rev 692, 727 (1960):

"[F]rom an analysis of the cases it becomes apparent that it is impossible to reduce the potentially infinite variety of situations in which the problem of retroactivity can arise to a single common denominator. However, it is just as clear that the factor most often appearing in these cases is the extent to which the parties have laid reasonable reliance on the law existing at the time of the conduct whose legal consequences the retroactive statute would alter. The importance of this element is apparent when one considers that in very general terms the two major factors to be weighed in determining the validity of a retroactive statute are the strength of the public interest it serves and the unfairness created by its retroactive operation, and the reliance of the parties on preexisting law is perhaps the most accurate gauge of the latter."

See *Board of Supervisors of Arenac County* v. *Board of Supervisors of Iosco County* (1909), 158 Mich 344; *Cusick* v. *Feldpausch* (1932), 259 Mich 349.

pay for goods or services if, in accepting them, he had every reason to believe that acceptance would not incur a charge. See *Forbes Pioneer Boat Line* v. *Board of Commissioners, supra.* The previously exempt structures, having been connected to the sewage system in the reasonable belief that a tap-in was free of charge, accordingly remain exempt, and it cannot be said that the 1965 ordinance rectifies the arbitrary treatment of the *Metro* class.

In passing, it should be noted that foregoing discussion in no way questions the validity of the 1965 ordinance as applied to taps made after the date of its enactment.

### III.

Since the *Metro* class is entitled to a refund, it becomes necessary to decide how that end is to be accomplished. In fashioning the judgment entered below, the trial court accepted the plaintiffs' proposal and ordered that all sewer tap fees collected from the class be paid into court. To make possible the distribution of these funds, the court also ordered the city to furnish a schedule identifying the lots involved and the person or company having paid the fee. The defendants urge us to modify the judgment so that it requires the payment into court of only those funds for which an individual claim is filed within three to six months after notice is given by publication and registered letter. The sole reason assigned for this proposed modification is the alleged futility of raising the money necessary to satisfy the judgment, only to have substantial portions remain undistributed because certain class members are beyond the reach of notice.

We believe that the present judgment best serves the interests involved here. Regardless of the mechanics of distribution, the judgment in this class

action conclusively determines the city's liability to each member of the class. See *International Typographical Union* v. *County of Macomb* (1943), 306 Mich 562. Consequently, no apparent purpose is served by making the filing of a claim a condition of recovery. The difficulty with the defendants' proposed modification is that the city should not be permitted to retain any part of the unconstitutionally gained funds.

The order granting judgment in the plaintiffs' favor is affirmed.

All concurred.