NORTHVIEW CONSTRUCTION COMPANY v CITY OF ST CLAIR SHORES

Docket No. 54712. Argued March 14, 1974 (Calendar No. 10).—Decided December 18, 1975. Rehearing granted 395 Mich 924.

Northview Construction Company and other plaintiffs brought an action against the City of St. Clair Shores to secure a refund of excess building permit fees paid by them and also a refund of all excess fees paid by the class of all persons who purchased building permits between the date an unlawful amendment of the city building code established an excessive building permit fee schedule and the date of filing the action against the city. The Macomb Circuit Court, Edward J. Gallagher, J., dismissed the class action portion of the suit and granted plaintiffs' motion for summary judgment limited to the named plaintiffs. The dismissal of the class action was appealed to the Court of Appeals, Quinn, P. J., and T. G. Kavanagh and Corkin, JJ., which reversed and remanded for proper notice to the class members, and instructed the court to evaluate the question of adequacy of representation after the new notice had been served (12 Mich App 104; 162 NW2d 297 [1968] [Docket No. 3599]). On remand, plaintiffs moved for a partial summary judgment in favor of the class establishing the city's liability for all properly presented claims and requested a determination of the form of notice to class members. The circuit court entered an order for notice by publication only. Six builders responded. The circuit court again ruled that the action should be dismissed but in such form as not to affect the rights of the business entities that have made response and indicated their intent to file claims. The Court of Appeals, Lesinski, C. J., and J. W. Fitzgerald and Van Valkenburg, JJ., affirmed (Docket No. 11641). Plaintiffs appeal. *Held:*

1. The record does not support the conclusion reached by the Court of Appeals and the circuit court that the named plaintiffs and their counsel have not adequately represented the class.

REFERENCES FOR POINTS IN HEADNOTES
[1–7, 9, 10] 59 Am Jur 2d, Parties § 71 *et seq.*
[8] 59 Am Jur 2d, Parties § 87.
[11, 12] 5 Am Jur 2d, Appeal and Error § 761 *et seq.*

The two requirements for adequate representation in a spurious class action, that the representatives share common issues and interests with the unnamed class members, and that the representatives vigorously prosecute the rights of the class, were met in this case:

a. The representative plaintiffs in the instant litigation had claims typical of the class of those persons required to pay excess building permit fees under the illegal amendments to the building code. Each claim raises a common issue concerning the legality of the building permit fees and can be satisfied by a monetary refund.

b. The named plaintiffs accepted the circuit court's award of individual judgments, but this fact alone does not make them inadequate representatives of the class. They did not, as far as the record reveals, thereafter reduce their efforts on behalf of the absent class members. The Court of Appeals and the circuit court erred when they relied on the small number of intervening class members to find that there was insufficient interest to continue this suit as a class action. Because the notice provided to the absent class members was clearly inadequate, the courts lacked a sufficient factual basis upon which to proceed when reviewing the interest of the absent class members in the suit.

2. The limited notice by publication on remand was not reasonably calculated to reach the absent class members and was inferior to other methods of notice that could easily have been ordered.

3. On remand the circuit court should determine the substantive merits of the class claims.

4. After the circuit court resolves the issue of liability, it must insure that a satisfactory attempt is made to notify absent class members of their right to intervene in the class action. The circuit court should enter an order providing for direct mail notice to class members and supplement the notice with whatever other form of notice the court deems proper. Appropriate provision shall be made for forwarding notices returned because the addressee has moved or is unknown at the address in the city records to such other addresses as in the exercise of reasonable diligence can be obtained. The notice should either contain a returnable claim form or an explanation of how the class member can comply with the claim procedure established by the court.

5. After adequate notice has been given to the absent class members, the circuit court should devise a procedure for determining if those persons responding to the notice belong to the

class and, if so, the amount of recovery to which they are entitled.

6. Because the number of class members actually filing claims may, because of attrition, be less than the number in the class originally, the city should not be required to pay into a fund all excess fees paid by class members, but the amount, plus interest, due those class members filing claims within a time established by the circuit court. Reasonable attorney fees based on its size can be deducted from this fund, and individual awards made from it.

Coleman, J., dissented on the ground that the plaintiffs who have settled their claims are not adequate representatives of the class in this case. The cases in which a plaintiff whose individual claim has become moot may continue to represent the class involve the situation of a constitutional challenge to a statute or an alleged misapplication of a statute which could recur, or in which a defendant sought to stop the class action by rendering the named plaintiff's case moot. This is not such a case. It is not concerned with an important constitutional question, but the collection of money, nor has the defendant attempted to continue an unconstitutional or illegal practice by rendering the named plaintiffs' claims moot through settlement.

44 Mich App 614; 205 NW2d 895 (1973) reversed.

OPINION OF THE COURT

1. PARTIES—CLASS ACTION—ADEQUATE REPRESENTATION—BUILDING PERMITS.

Plaintiffs adequately represented the class of all persons who purchased building permits between the date a city's building code established an excessive building permit fee schedule and the date of bringing an action against the city to secure a refund of the excess fees paid where the representative plaintiffs possessed claims typical of the class of those persons required to pay excess building permit fees, and each claim raises a common issue concerning the legality of the building permit fees and can be satisfied by a monetary refund, and where, after accepting individual judgments, the plaintiffs proceeded to prosecute two appeals in the Court of Appeals, various proceedings in the circuit court and an appeal to the Supreme Court.

2. PARTIES—CLASS ACTION—ADEQUATE REPRESENTATION.

Implicit in every class action is the issue of adequacy of representation; since the representatives seek to litigate issues on behalf

of the absent class members, the courts must determine if the representatives are members of the class and capable of representing it properly.

3. PARTIES—SPURIOUS CLASS ACTION—ADEQUATE REPRESENTATION—
   JUDGMENT—BINDING EFFECT—DUE PROCESS.

   In a spurious class action, absent class members are not normally bound by the judgment of the court unless they affirmatively intervene in the suit and they have the benefit of "one-way intervention": they may silently await the final decision of the court and if it is favorable to their interests, they may then join in the class for the presentation of individual claims against the defendant, or if the decision is not favorable to their interests, and they have not joined the class suit, they are not legally bound by the findings of the court and are free to take legal action against the defendant in their individual capacities; therefore the adequacy of representation of the class does not take on due process dimensions, and the courts should limit themselves to a reasonable inquiry into the issue (GCR 1963, 208.1[3]).

4. PARTIES—SPURIOUS CLASS ACTION—ADEQUATE REPRESENTATION.

   There are two general requirements for adequate representation in a spurious class action: (1) the representatives must share common issues and interests with the unnamed class members, and (2) the representatives must vigorously prosecute the rights of the class through qualified counsel.

5. PARTIES—SPURIOUS CLASS ACTION—ADEQUATE REPRESENTATION.

   The single fact that the named plaintiffs in a spurious class action have accepted judgment does not lead to the conclusion that they and their counsel are no longer adequate representatives; the inquiry should go in back of the individual judgments to determine if the representatives have, in fact, abandoned their representative role.

6. PARTIES—SPURIOUS CLASS ACTION—ADEQUATE REPRESENTATION—
   COUNSEL.

   The professional obligation to represent the class together with the prospective monetary award for successfully doing so make counsel in a spurious class action an important force with a continuing interest in the litigation; the size of the claims of the named plaintiffs is not necessarily of importance in determining adequacy of representation where the amount of possible recovery by the class rather than by the individual plaintiffs furnishes the motivating force behind prosecution.

7. PARTIES—SPURIOUS CLASS ACTION—ADEQUATE REPRESENTATION—
INTERVENTION.

Failure of class members to intervene in a spurious class action
prior to judgment is equally consistent with satisfaction with
the representatives, dissatisfaction with the representatives,
lack of interest in the action, or a lack of knowledge of its
existence, and before a court concludes from the small number
of intervenors that there is insufficient interest to continue the
suit as a class action it must determine that it has an adequate
factual basis for its conclusion; there can be no such factual
basis where the notice to absent class members was clearly
inadequate.

8. PARTIES—CLASS ACTION—NOTICE.

A court seeking to measure the interest of a class and perhaps
dismiss an action, thereby putting an end to a class claim, must
first order adequate notice and convey to the class members
their need to intervene to preserve the action.

### DISSENTING OPINION

### COLEMAN, J.

9. PARTIES—CLASS ACTION—ADEQUATE REPRESENTATION—DISMISSAL
AND NONSUIT.

*Dismissal of a class action is not erroneous where the named
plaintiffs secure judgment in their favor alone prior to the
intervention of any other member of the class and the judg-
ments are satisfied without an order continuing the litigation
as a class action (GCR 1963, 208.1[3]).*

10. PARTIES—CLASS ACTION—ADEQUATE REPRESENTATION.

*A trial court could have determined that there was not adequate
representation in a class action from the mere fact that the
named plaintiffs had departed from the suit prior to the ap-
pearance of any other member of the class by seeking and
accepting judgment in favor of themselves alone.*

11. PARTIES—CLASS ACTION—MOOT CLAIMS.

*A class action may continue where the named plaintiff's claim is
moot and where a statute or procedure is challenged on
grounds of constitutionality or misapplication; two reasons are
usually present if a moot claim is continued as a class action:
(1) possible recurrence of the alleged illegality and (2) preven-
tion of defendant from stopping a class action and continuing*

*unconstitutional or illegal practices by rendering the named plaintiff's claim moot.*

12. PARTIES—CLASS ACTION—ADEQUATE REPRESENTATION—MOOT CLAIMS.

   *A class action in which the collection of money is the focus and not an allegedly recurrent unconstitutional practice especially requires adequate representation for the class and not representation by withdrawn named plaintiffs who have received a satisfied judgment.*

*Honigman, Miller, Schwartz & Cohn* (by *Norman Hyman* and *John Sklar*), for plaintiffs.

*John H. Yoe,* for defendant.

PER CURIAM. Plaintiffs appeal the dismissal of their class action against defendant City of St. Clair Shores. This cause was instituted in 1960. It has twice been before the Court of Appeals. A brief review of the prior proceedings is necessary for a proper understanding of the issues now before us.

In *Merrelli v St Clair Shores,* 355 Mich 575; 96 NW2d 144 (1959), this Court held unlawful certain amendments to the St. Clair Shores building code on the grounds that they established an illegally excessive building permit fee schedule. No refund issue was present in the *Merrelli* case. After *Merrelli* some unrelated and independent individual actions were instituted by various builders to recover illegal building permit fees already paid to the city. One such suit, viewed as a test case, was *Beachlawn Building Corp v St Clair Shores,* 370 Mich 128; 121 NW2d 427 (1963), 376 Mich 261; 136 NW2d 926 (1965). Therein, this Court ruled that the City of St. Clair Shores was obligated to refund all excessive building permit fees paid to it by the Beachlawn Building Corporation.

After the initial filing of *Beachlawn,* plaintiffs

filed the instant lawsuit in order to secure a refund of the excess fees paid by the named plaintiffs and also a refund of all excess fees paid by the class of all persons who purchased building permits between September 20, 1954[1] and the date of the filing of the action, July 27, 1960. In conjunction with the complaint, plaintiffs filed an *ex parte* motion for notice to class members. The motion requested that notice and a bill of complaint be served on the Builders Association of Metropolitan Detroit. Plaintiffs' motion was immediately granted by the circuit court.

After the city filed its answer, progress on the case halted. The parties entered into a stipulation adjourning the suit until the final decision in *Beachlawn.* From 1960 until 1965 the case lay dormant.

On November 17, 1965, progress toward resolution of this suit again began when the city filed a motion for summary judgment seeking to dismiss plaintiffs' complaint. The city argued that the pleadings did not establish a proper class action and also challenged the adequacy of the notice to the absent class members. Plaintiffs opposed the city's motion for summary judgment and, in addition, on September 8, 1966, filed their own motion for summary judgment. This latter motion requested a judgment establishing the liability of the city for the claims of the class.

In April, 1967, the trial court granted the city's motion for summary judgment and dismissed the class action portion of the suit. The court based its judgment on the apparent lack of interest by potential class members. The court noted that while several individual refund suits had been

---

[1] On September 20, 1954, the City of St. Clair Shores amended its Building and Zoning Code to require the payment of fees later held to be excessive in the *Merrelli* decision.

filed against the city, no class members attempted
to intervene or otherwise include themselves in
this suit. Having thus dismissed the class action,
the court found it unnecessary to provide the class
with proper notice and also found it unnecessary
to determine if the named plaintiffs could ade-
quately represent the class.

The plaintiffs filed a timely claim of appeal from
the dismissal of the class action. The following
month, however, the circuit court granted plain-
tiffs' motion for summary judgment as limited by
the court to the named plaintiffs. Judgment was
entered in favor of the trustee in bankruptcy of
Northview Construction Company in the principal
amount of $16,144 plus interest and costs, in favor
of R and L Building Company in the principal
amount of $2,470 plus interest and costs and in
favor of Sunnyview Building Company in the prin-
cipal amount of $3,480 plus interest and costs.
Plaintiffs' attorney filed a satisfaction of judgment
with the Macomb Circuit Court on June 3, 1968.

The class action appeal was nonetheless prose-
cuted in the Court of Appeals. A unanimous panel
reversed the dismissal of the action by the circuit
court. *Northview Construction Co v St Clair
Shores,* 12 Mich App 104; 162 NW2d 297 (1968).
The Court of Appeals ruled that the plaintiffs'
allegations were sufficient to state a cause of ac-
tion under the class action rule, GCR 1963, 208;
but the Court of Appeals found it impossible to
grant binding relief "for or against members of the
class * * * on the present record". It remanded
the case to the circuit court for proper notice to
the class members and instructed the court to
reevaluate the question of adequacy of representa-
tion after the new notice had been served.

Following remand to the trial court, defendant

made available to plaintiffs its building permit
records. From these records plaintiffs were able to
determine the names and addresses of the previ-
ously unnamed class members. In September,
1969, plaintiffs filed a two-pronged motion. First,
the motion requested a partial summary judgment
in favor of the class establishing the city's liability
for all properly presented claims. Second, the mo-
tion requested a determination of the form of
notice to class members. Plaintiffs proposed that
their attorney be allowed to mail notice of the
action accompanied by a claim form to each class
member appearing in the city's building permit
records and also be allowed to place notice in area
newspapers. After hearing arguments on the mo-
tion, the circuit court entered an order for notice
by publication only in the belief that to permit
claim forms to be mailed would be tantamount to
a solicitation of claims by plaintiffs' attorney and
constitute a breach of the Canons of Ethics. The
newspaper publication notice ordered by the court
was of a more limited scope than that proposed by
plaintiffs. The publication order permitted notice
once a week for three weeks in the *Macomb
County Legal News, The Detroit Legal News,* and
*The Community Newspaper,* a local St. Clair
Shores newspaper.

The response to the notice was minimal, as only
six other builders responded. In mid-1970, the trial
court held a hearing to determine if the class
action should be allowed to continue. Later in that
year the court again ruled that the action should
be dismissed "but in such form as not to affect the
respective and several legal rights of the business
entities that have made response and indicated
their intent to file claims in these proceedings".

An appeal was taken by the plaintiffs to the

Court of Appeals. On this appeal the Court of Appeals affirmed the ruling of the circuit court and upheld the dismissal of the class action. *Northview Construction Co v St Clair Shores,* 44 Mich App 614; 205 NW2d 895 (1973). The Court of Appeals wrote:

"The sole question before this Court is whether the trial court properly dismissed the class-action suit. The trial court dismissed the class action on the basis that since the named plaintiffs had already departed from the case and since there was so little response from the remaining class members, the requisite indicia of adequate representation was not present; therefore, the class action should not be continued.

\* \* \*

"In the prior appeal, this Court held only that the trial court should not have dismissed the class action because of want of adequate notice and that, at the time of the dismissal, there was not a sufficient basis to determine the adequacy of representation and the practicality of bringing all the members of the class before the court. See 12 Mich App 104, 106 (1968). This Court directed the trial court to serve notice upon the members of the class and thereafter determine the adequacy of the representation. This the trial court did.

"The named plaintiffs by seeking and accepting judgment in favor of themselves alone clearly evidenced their lack of desire to continue the class action. While we perceive that the trial court could have determined that there was not adequate representation from the mere fact that the named plaintiffs had departed from the suit prior to the appearance of any other member of the class, and thus obviating the necessity of notice to the other members of the class, the members of the class who did respond to the notice only serve to buttress the trial court's determination that there was not adequate representation to justify the continuation of the class action. Not only was the response to the notice small, but those who responded to the notice clearly indicated that they were interested only in their own

claims and were not interested in continuing the class action.

"The trial court had a clear duty to terminate the class action at such time as it became evident that there was not adequate representation to protect those who were absent. GCR 1963, 208.4. Clearly, under these circumstances, it cannot be said that the trial court was clearly erroneous in its determination that there was not adequate representation to justify continuation of the class action." (Footnotes omitted.) 44 Mich App 614, 617, 620–622.

We reverse the Court of Appeals and remand this matter to the circuit court for expeditious resolution of the class claims. The record does not support the conclusion reached by the Court of Appeals and the circuit court that the named plaintiffs and their counsel have not adequately represented the class.

## CLASS ACTIONS UNDER GCR 1963, 208.1(3)

As applicable to the present case GCR 1963, 208.1(3) sets forth the following requirements:[2]

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is

\* \* \*

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

---

[2] When this suit was commenced, class actions were governed by Rule 16 of the Michigan Court Rules of 1945. When the GCR were adopted, the requirements of former Rule 16 were incorporated into GCR 1963, 208. Since the former and the present rule are largely the same, we will refer only to GCR 1963, 208, unless specific reference is necessary to former Rule 16.

An action commenced under the authority of GCR 1963, 208.1(3) is commonly known as a "spurious" class action. When the number of parties holding similar claims against a defendant is so large that it would be impracticable to bring each claim individually before the court, GCR 1963, 208.1(3) functions as a permissive joinder device. *Paley v Coca Cola Co,* 389 Mich 583, 607; 209 NW2d 232 (1973) (Opinion of SWAINSON, J.). It allows at least one named plaintiff to represent the class before the court and to litigate the issues common to the claims against the defendant.[3]

## ADEQUACY OF REPRESENTATION

Implicit in every class action is the issue of adequacy of representation. Since the representatives seek to litigate issues on behalf of the absent class members, the courts must determine if the representatives are members of the class and capable of properly representing it. With reference to spurious class action the courts focus on two general requirements.[4] "First, the representatives

---

[3] In keeping with the facts of the present case we address spurious class actions from the perspective of a plaintiffs' class.

[4] In reviewing adequacy of representation under GCR 1963, 208.1(3) our courts should limit themselves to a reasonable inquiry into the issue. Under a GCR 1963, 208.1(3) spurious class action, as under former FR Civ P 23 after which it was modeled, absent class members are not normally bound by the judgment of the court unless they affirmatively intervene in the suit. The absent class members have the benefit of "one-way intervention". They may silently await the final decision of the court. If that decision is favorable to their interests, they may then join in the class for the presentation of individual claims against the defendant. If, conversely, the decision is not favorable to their interests, and they have not joined the class suit, they are not legally bound by the findings of the court and are free to take legal action against the defendant in their individual capacity. *American Pipe & Construction Co v Utah,* 414 US 538, 546–549; 94 S Ct 756; 38 L Ed 2d 713 (1974); *Minnesota v United States Steel Corp,* 44 FRD 559, 574–575 (D Minn, 1968). Since the absent class members are not bound, the adequacy of representation does not take on due process dimensions and the linchpin for a strict scrutiny

must share common issues and interests with the unnamed class members. Second, the court must be assured that the representatives will vigorously prosecute the rights of the class through qualified counsel." *Epstein v Weiss,* 50 FRD 387, 392 (ED La, 1970). See, also, *Dolgow v Anderson,* 43 FRD 472, 493–494 (ED NY, 1968); *Mersay v First Republic Corp of America,* 43 FRD 465, 470 (SD NY, 1968).

*A. The representatives must share common issues and interests with the absent class members.*

This first adequacy of representation requirement is fulfilled by representatives who have an interest in a claim that is typical of the remaining class claims.[5] Under GCR 1963, 208.1(3), a claim is typical when it is based on a "common question of law or fact * * * and a common relief is sought". The claims need not be identical in such matters as the individual amount of damages, *Foster v Detroit,* 254 F Supp 655, 667–669 (ED Mich, 1966), aff'd 405 F2d 138 (CA 6, 1968); *Oppenheimer v F J Young & Co,* 144 F2d 387, 390 (CA 2, 1944), so long as common issues predominate and a judicial economy will be realized through the class action procedure. *Partain v First National Bank of Montgomery,* 59 FRD 56 (MD Ala, 1973).

The representative plaintiffs in the instant litigation possessed claims typical of the class of those

of the issue is absent. *Dolgow v Anderson,* 43 FRD 472, 493 (ED NY, 1968); *Oppenheimer v F J Young & Co,* 144 F2d 387, 390 (CA 2, 1944); *Rosen v Bergman,* 40 FRD 19 (SD NY, 1966).

In contrast, when a court rule, such as present FR Civ P, 23(c)(2), and/or the notice served on absent class members binds them to the class judgment, the court should closely assess the adequacy of representation. *Hettinger v Glass Specialty Co, Inc,* 59 FRD 286, 296 (ND Ill, 1973); *Cf. Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974); Kratchman, *Class Actions in Michigan,* 53 MSBJ 175, 177 (1974).

[5] *See, generally, Huff v N D Cass Co of Alabama,* 485 F2d 710 (CA 5, 1973); 3B Moore's Federal Practice (2d ed), § 23.07.

persons required to pay excess building permit fees under the illegal amendments to the St. Clair Shores Building Code. Each class claim raises a common issue concerning the legality of the building permit fees and each claim can be satisfied by a monetary refund. After the merits are resolved the court should be able to set up a simple procedure for determining the eligibility and individual amount of relief due each class member. See, *e.g., Foster v Detroit, supra.*

*B. The representatives must vigorously prosecute the rights of the class through qualified counsel.*

The intertwined requirements of vigorous prosecution and employment of qualified counsel act to assure the court of a true adversary proceeding between the plaintiff class and the defendant. *Cf. Entin v Barg,* 60 FRD 108, 114, fn 9 (ED Pa, 1973); *Hansberry v Lee,* 311 US 32, 45–46; 61 S Ct 115; 85 L Ed 22 (1940). The representatives' interests must be typical and compatible with those of the class they seek to represent and, of course, opposed to the interests of the defendant. *Hansberry v Lee, supra.* In asserting their own individual cases, the representatives must at the same time be able to forthrightly and vigorously assert the interests of the class. *Mersay v First Republic Corp of America,* 43 FRD 465 (SD NY, 1968).

The qualifications of plaintiffs' counsel have not been challenged;[6] but the diligence of the action's prosecution has been called into question. First, it is claimed that the representatives are no longer able to vigorously represent the class because they have accepted individual judgments. Second, the

---

[6] In appellee's brief at page 43 the following statement is made:

"We have not questioned, nor do we now question, the legal competency or qualifications of the law firm who has prosecuted this action * * * ."

small number of intervening class members is said to indicate a lack of interest in the class action and require its dismissal.

1. A predominant concern expressed throughout the prior proceedings in this action has been the fact that the named plaintiffs accepted satisfaction of their individual claims against the defendant while purporting to remain as class representatives. Reference to this situation is made in the portion of the Court of Appeals opinion quoted *supra,* and it is addressed in detail in appellee's brief. Both the Court of Appeals and appellee city assumed that because the named plaintiffs have received their recovery, they and their counsel are no longer able to adequately represent the class. While this position seems a priori reasonable, the guidance of the Federal case law reveals the overbreadth of such a conclusion.

Under the Federal case law, a court may not conclude from the single fact that the named plaintiffs have accepted judgment that they and their counsel are no longer adequate representatives. The court's inquiry should go in back of the individual judgments in order to determine if the representatives have, in fact, abandoned their representative role. If, for example, the representatives accept individual judgments in a manner that is contrary to the interests of the class or otherwise indicative of an abandonment of their representative duties, the court should clearly find them to be inadequate representatives. If, however, the representatives and their counsel seek the court's approval prior to the individual judgments, and if thereafter they continue to vigorously prosecute the rights of the class, there is no basis for a conclusion of inadequate representation. See *Wymelenberg v Syman,* 54 FRD 198, 200

(ED Wis, 1972); *Frost v Weinberger,* 375 F Supp 1312, 1318–1319 (ED NY, 1974); *Stokes v Bonin,* 366 F Supp 485, 488 (ED La, 1973); *Thomas v Clarke,* 54 FRD 245 (D Minn, 1971); *Huff v N D Cass Co of Alabama,* 485 F2d 710, 714 (CA 5, 1973).

The facts in today's case are illustrative of a situation in which the acceptance of individual judgments has not affected the adequacy of representation. The representatives initially sought a judgment on behalf of all class members. After the court dismissed the class action and denied that portion of plaintiffs' motion for judgment, the representatives filed a timely claim of appeal. The named plaintiffs did then accept the court's award of individual judgments, but they did not, as far as the record reveals, thereafter reduce their efforts on behalf of the absent class members. After accepting individual judgments, the plaintiffs proceeded to prosecute two appeals in the Court of Appeals, various proceedings in the circuit court and the present appeal to our bench. In all of these proceedings plaintiffs' counsel, acting in the name of the representatives, has been the moving force and has adequately protected the interests of the class.

The crucial role played by counsel in a class action should not be overlooked or underemphasized. The professional obligation to represent the class plus the prospective monetary award for successfully doing so make counsel an important force with a continuing interest in the litigation. In an analogous situation in the case of *Dolgow v Anderson, supra,* Judge Weinstein offered some candid comments on the role of counsel in a class action. In refuting an allegation that the interests of the named plaintiffs were of insufficient size to

insure adequate representation, Judge Weinstein wrote:

"In contending that the size of the claims of the parties before the court should be given great weight in determining the question of adequacy of representation, the defendants assume that the plaintiffs' force in prosecuting the action is proportionate to the amount they hope to recover. This equation is based on the assumption that the plaintiffs bring this action solely to recover their individual damages. The realities of the situation here and in the vast majority of class actions suggest that the amount of possible recovery by the class rather than by the individual plaintiffs furnishes the motivating force behind prosecution. [Citations omitted.]" 43 FRD 472, 494–495.

In summation, we find no support in the record for a conclusion that the named plaintiffs' acceptance of individual judgments rendered them inadequate class representatives.

2. We also believe that the Court of Appeals and the circuit court erred in this case when they relied on the small number of intervening class members to find that there was insufficient interest to continue this suit as a class action. The basic factual premise for such a finding is that the class members knew of the action and with that knowledge did not intervene because they were not interested in the suit. A sparsity of intervenors standing alone is meaningless. The failure to intervene prior to judgment in a spurious class action is equally consistent with satisfaction with the representatives, dissatisfaction with the representatives, lack of interest in the action or a lack of knowledge of its existence. If the court finds it necessary to rely on the number of intervenors, it must first determine that it has an adequate factual basis for its conclusion. *Cf. Knuth v Erie-Crawford Dairy*

*Coop Ass'n,* 395 F2d 420, 428 (CA 3, 1968), *cert den* 410 US 913; 93 S Ct 996; 35 L Ed 2d 278 (1973).

In the present case, because the notice provided to the absent class members was clearly inadequate, the courts lacked a sufficient factual basis upon which to proceed when reviewing the interest of the absent class members in the suit. In its 1968 opinion the Court of Appeals found that the original notice was inadequate and would not support an assessment of class interest.[7] Accordingly, the Court of Appeals remanded the matter for correction and further review. On remand, however, the circuit court narrowly read the Court of Appeals opinion with the consequence that only a limited notice by publication was served on the class. This latter notice was not reasonably calculated in this case to reach the absent class members and was inferior to other methods of the notice that could have easily been ordered by the court. With the information that was available in the city's records, the court could have, for example, markedly increased the chances of reaching the class by ordering a simple notice by mail.[8] *Cf.*

[7] In this regard we believe that plaintiffs' counsel should have made a motion to settle the class and to discover the names and addresses of absent class members shortly after the action was commenced. Kratchman, *Class Actions in Michigan,* 53 MSBJ 175, 178 (1974). Counsel then could have sought court approval for some type of individual notice. Instead, the *ex parte* notice was relied upon. This notice was initially inadequate and when coupled with the long delays in the action raises a serious question of whether potential class members can now be located and notified of their rights arising out of transactions over 15 years old. If initial notice had been adequate, the class members would have been provided with sufficient information to keep themselves in touch with the action's progress. We do not focus more attention on this inadequate original notice because neither the court rule nor due process considerations required counsel to do more than was done herein. *See* fn 4, *supra.*

[8] Under FR Civ P, 23(c)(2) this problem is eliminated. Once the representatives have notified the absent class members of the action, the burden shifts to the absent class members to "opt out" if they do not desire to be a member of the class. The court's focus also shifts to

*Mullane v Central Hanover Bank & Trust Co,* 339
US 306; 70 S Ct 652; 94 L Ed 865 (1950).

The problems concerning notice that have arisen
in this case reflect the fact that the notice provi-
sions in our class action rule are vague. This
vagueness is aggravated by the lack of due process
constraints in a spurious class action. See fn 4,
*supra.*

We conclude that if a court seeks to measure the
interest of the class and perhaps dismiss a class
action, thereby putting an end to the class claim,
it must first order adequate notice and convey to
the class members their need to intervene to pre-
serve the action. If the court does otherwise, it
lacks the factual basis necessary for such a deci-
sion.[9]

We find that there was not sufficient evidence to
support the circuit court and Court of Appeals
finding of inadequacy of representation based upon
the conduct of the named plaintiffs or the small
number of intervenors. To affirm such findings
would merely penalize the absent class members
for the confusion of all other participants in the
suit. We accordingly suggest that the following
procedures be employed to equitably terminate
this protracted litigation.

reviewing affirmative expressions of dissatisfaction with the repre-
sentatives. 7 Wright & Miller, Federal Practice & Procedure, § 1768.

[9] The appellee argues that there was sufficient notice in this case
based on the widespread notoriety of this action among Detroit area
professional builders. We must reject this position. Even assuming
such widespread notoriety, there is no evidence that the builders were
informed that it would be necessary to intervene to preserve the suit.
The notoriety, moreover, was widespread at the time that the action
was commenced in 1960 and arguably extended through the 1963
resolution of *Beachlawn.* The circuit court decision that there was an
insufficient number of intervenors, however, was not made until 1970.
By that time the initial notoriety of the action was too remote to
insure that class members knew of the action or of any steps they
were required to take to further its progress.

### A. Remand

On remand the circuit court should determine the substantive merits of the class claims. Since it is a matter of record that the class claims are legally and factually like those of the named plaintiffs heretofore found meritorious by the circuit court, we proceed on the assumption that judgment will be entered in favor of the class.

### B. Notice

After the circuit court resolves the issue of liability, it must insure that a satisfactory attempt is made to notify the absent class members of their right to intervene in the class action. The court's duty at this stage in the litigation is to enforce its finding of liability.[10] *Bond v Ann Arbor School Dist,* 383 Mich 693, 702–706; 178 NW2d 484; 41 ALR3d 742 (1970).

In a case such as the case before us today, the physical problems of notice are greatly reduced by the fact that the city has the names and addresses of all persons who purchased building permits during the period of the illegal fee schedule. The circuit court should enter an order providing for direct mail notice to the class members and supplement the mail notice with whatever other form of notice the court deems proper. Appropriate provision shall be made for forwarding to such other addresses as in the exercise of reasonable diligence can be obtained notices returned because the addressee has moved or is unknown at the address in the city's records. The notice should, at this point in the litigation, either contain a returnable claim form or an explanation of how the class

---

[10] In particular factual situations the court may decide that justice will not be served by individual restitution, thus modifying the need to notify the class members of the award. *See, generally, Manageability of Notice and Damage Calculation in Consumer Class Actions,* 70 Mich L Rev 338, 363–373 (1971).

member can comply with the claim procedure established by the court.

## C. Intervention

After adequate notice has been given to the absent class members, the circuit court should devise a procedure for determining if those persons responding to the notice belong to the class and, if so, the amount of recovery to which they are entitled. *State Wholesale Grocers v Great Atlantic and Pacific Tea Co,* 24 FRD 510, 513 (ND Ill, 1959). A model for such a procedure may be found in *Foster v Detroit,* 254 F Supp 655, 668–669 (ED Mich, 1966). In *Foster* the district court appointed a special master to handle the details involved in collecting the individual class claims against the City of Detroit. The court allowed the absent class members "a period of six months, in which to appear and file claims before a special master who will determine their membership in the class and the extent, if any, of their damages * * * ". In order to facilitate the calculation of damages, the City of Detroit was required to make available its records relating to the loss suffered by each class member. The city was also provided the opportunity to challenge any intervenor's membership in the class and allowed to be a party to the calculation of individual damages.

We recognize that the procedure employed in *Foster,* cannot literally be followed in the state courts. See Const 1963, art 6, § 5; *cf. Frank v Schultz,* 295 Mich 714; 295 NW 374 (1940). The circuit court, however, may fashion an analogous procedure for the fair and expeditious resolution of this class action.[11]

---

[11] Since the statute of limitations has long since run on claims arising before 1960, we note that the filing of this class action tolled the running of the statute of limitations for all class claims that were viable as of July 27, 1960. This result is in keeping with the concept

## D. Payment of Damages

The relief requested by plaintiffs is the creation of a fund comprised of all excess building fees paid by the class members plus interest. From this fund plaintiffs would have the court deduct the costs of the action, reasonable attorney fees and the proper amount of damages for each class member who files a valid claim according to the procedures established by the court. The expenses incurred in connection with the administration of the fund would also be deducted and any remaining funds returned to the city. (Plaintiffs' Motion for Summary Judgment, September 4, 1969).

A similar approach was adopted by the Court of Appeals in the case of *Metro Homes, Inc v City of Warren,* 19 Mich App 664, 674–675; 173 NW2d 230 (1969). See, also, *Bond v Ann Arbor School Dist, supra.* An important distinction, however, between *Metro Homes* and today's case is the speed with which each case was prosecuted. While *Metro*

of a representative class action in which one or a few persons may prosecute the case on behalf of the class. Support for this position is abundant in the Federal case law. *See, for example, Mutation Mink Breeders Association v Lou Nierenberg Corp,* 23 FRD 155, 162 (SD NY, 1959):

"The 'spurious class suit' is merely a device for permissive joinder. *California Apparel Creators v Wieder of California* [162 F2d 893 (CA 2, 1947)], *supra;* 3 Moore, Federal Practice, p 3442. It does not 'grant authority to adjudicate finally rights as to nonappearing parties or to confer any additional substantive rights upon the plaintiffs suing'. *California Apparel Creators v Wieder of California, supra,* 162 F2d at page 897; *Oppenheimer v F J Young & Co,* 144 F2d 387 [CA 2, 1944]; *Nagler v Admiral Corp,* 248 F2d 319 [CA 2, 1957]. It is an invitation to the members of the affected class to join in the action. If they do not so join they cannot be bound by the result. 3 Moore, Federal Practice, 3443, *Waks v Bareco Oil Co,* 125 F2d 84 [CA 7, 1941]; *Nagler v Admiral Corp, supra.* The device is useful since it tolls the statute of limitations while absent plaintiffs decide whether or not to join in the action, and permits intervention without regard to diversity of citizenship or jurisdictional limitations. 3 Moore, Federal Practice, pp 3476, 3477; Hart & Wechsler, The Federal Courts and The Federal System, pp 935, 936."

*See, also,* 3B Moore's Federal Practice (2d ed), § 23.12, n 29.

*Homes* appears to have progressed with reasonable dispatch, today's case has become a product of excessive delays, in part attributable to the plaintiffs. As a result of these delays, the requested relief may be an unnecessarily harsh burden on defendant city. While the amount of interest that has accrued over the course of the action may be substantial, the number of class members actually filing claims will undoubtedly evidence the natural attrition of a 15–20 year delay between the date of purchase of a building permit and the date of recovery set by the courts. The city thus would be required to pay a larger fund into court than may be needed to meet the class claims.

The circuit court should employ its discretion to see that justice is done. We suggest that costs be taxed against the city and the city create a fund that is equal to the damages found to be due to those class members filing valid claims within the time limits established by the circuit court plus interest from July 21, 1965, the effective date of 1965 PA 240; MCLA 600.6013; MSA 27A.6013. Reasonable attorney's fees, based on the size of this sub-class, can then be deducted from the fund and individual awards made. See Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards,* 69 Harv L Rev 658 (1956); Simeone, *Procedural Problems in Class Suits,* 60 Mich L Rev 905, 950–953 (1962).

Reversed and remanded to the Macomb Circuit Court.

T. G. KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred.

FITZGERALD, LINDEMER, and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(dissent).* The Court of Appeals

opinion *Northview Construction Co v St Clair Shores,* 44 Mich App 614; 205 NW2d 895 (1973) correctly phrased the issue in this case:

"Where the named plaintiffs in a class action pursuant to GCR 1963, 208.1(3) secure judgment in their favor alone, prior to the intervention of any other member of the class, did the trial court err in dismissing the class action?"

Like that Court, I conclude the answer is "no".

As noted by the Court of Appeals, the named plaintiffs were granted summary judgment on their claims alone. Further, "[t]hese judgments were satisfied, but without any order continuing the litigation as a class action".

After the named plaintiffs in the class action were "gone from the scene", the trial court ordered notice by publication. Plaintiffs challenge the type of notice ordered. However, it is not necessary to rule on the form of notice because prior to the first appeal "the trial court could have determined that there was not adequate representation from the mere fact that the named plaintiffs had departed from the suit prior to the appearance of any other member of the class, and thus obviating the necessity of notice to the other members of the class * * * ".[1]

---

[1] "[T]he members of the class who did respond to the notice only serve to buttress the trial court's determination that there was not adequate representation to justify the continuation of the class action. Not only was the response to the notice small, but those who responded to the notice clearly indicated that they were interested only in their own claims and were not interested in continuing the class action." *Northview, supra,* at 621.

The Court of Appeals also noted that "The lack of enthusiasm on the part of the other contractors to join in this class action may well be explained by the fact that there was an attempt on the part of the owners of the homes built during the period in question to intervene, asserting that they were the true parties in interest. The contractors may well have determined that they had been able to pass their

The per curiam opinion terms the Court of Appeals holding "a priori reasonable". However, it says the holding is overbroad under Federal case law. My reading of the Federal cases does not support the opinion that the withdrawn named plaintiffs may adequately represent a class in this case.

The cases cited by the per curiam opinion, and many others not cited, do stand for the proposition that a plaintiff whose individual claim has been rendered moot may continue to represent a class. However, these cases involve the unique situation of a constitutional challenge to a state or Federal statute, or an alleged misapplication of a statute.

In *Thomas v Clarke,* 54 FRD 245 (D Minn, 1971), cited by the per curiam opinion, the named plaintiff started a class action in Federal court challenging the constitutionality of a state claim and delivery statute. The statutory action against the plaintiff was settled in state court. Defendant argued that plaintiff's Federal case was rendered moot. The court rejected the claim of mootness with little discussion, citing several supporting cases. The plaintiff was allowed to continue as a proper representative of the class action.

In *Frost v Weinberger,* 375 F Supp 1312 (ED NY, 1974), *reversed on other grounds,* 515 F2d 57 (CA 2, 1975),[2] also cited by the per curiam opinion, the plaintiff challenged the constitutionality of actions which decreased social security survivors' benefits without a prior hearing. The plaintiff was given a hearing subsequent to starting the class

---

increased cost on to the ultimate consumer, the home buyer. Clearly, the builders would gain nothing if they, in turn, faced suits by the buyers for the moneys recovered in this class-action suit." *Northview, supra,* at 621, fn 8.

[2] Judge Friendly agreed with the district court on the mootness issue, although reversing on the substantive issue.

action. The Court held that "mootness of an individual plaintiff's claim will not necessarily render the class action moot". The Court said "the touchstone for determining mootness is the likelihood that the behavior complained of will not recur". The class action was not .moot because the Social Security Administration continued to use procedures that did not provide for a prereduction hearing. The Court commented on the rationale underlying the mootness rule in such class actions:

"If the rule were otherwise, a defendant might easily circumvent the judicial resolution of an important constitutional issue simply by settling the individual case of the representative plaintiff. Fortunately, the courts will not permit a defendant to use the doctrine of mootness as a vehicle to evade the resolution of key constitutional questions."

To the same effect, and cited by the per curiam opinion, see *Huff v N D Cass Co of Alabama,* 485 F2d 710 (CA 5, 1973) (class action civil rights suit); *Stokes v Bonin,* 366 F Supp 485 (ED La, 1973) (challenge to food stamp benefit reduction without hearing); *Wymelenberg v Syman,* 54 FRD 198 (ED Wis, 1972) (constitutional challenge of state residency requirement for divorce).

Other cases, cited in those cases relied upon by the per curiam opinion, carry the same message. See *Steinberg v Fusari,* 364 F Supp 922 (D Conn, 1973), *vacated and remanded on other grounds,* 419 US 379; 95 S Ct 533; 42 L Ed 2d 521 (1975) (constitutional challenge of state unemployment compensation termination procedures where named plaintiffs did have hearings, but class action continued because the unconstitutional procedure could recur); *Torres v New York State De-*

*partment of Labor,* 318 F Supp 1313 (SD NY, 1970) (where the court stressed the "danger that the defendants could always grant the named plaintiff a hearing and then claim that the matter is moot or the plaintiff not representative in an effort to evade a judicial determination of the underlying constitutional issues"); *Kelly v Wyman,* 294 F Supp 893 (SD NY, 1968), *affirmed sub nom Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970) (constitutional challenge of welfare benefits termination without prior hearing where named plaintiffs could continue class action because of the important constitutional question); *Davis v Caldwell,* 53 FRD 373 (ND Ga, 1971) (constitutional challenge of workmen's compensation benefits termination without prior hearing with same result as *Torres, supra,* and *Kelly, supra); Gatling v Butler,* 52 FRD 389 (D Conn, 1971); *Knowles v Butz,* 358 F Supp 228 (ND Cal, 1973) (class action continued although named plaintiff's claim was moot because the alleged misinterpretation of a statute could recur); *Crow v California Department of Human Resources,* 325 F Supp 1314 (ND Cal, 1970), *reversed on other grounds,* 490 F2d 580 (CA 9, 1973) *certiorari denied,* 408 US 924; 92 S Ct 2495; 33 L Ed 335 (1972) (possible recurrence allowed to continue class action); *Vaughan v Bower,* 313 F Supp 37 (D Ariz, 1970) *affirmed,* 400 US 884; 91 S Ct 139; 27 L Ed 2d 129 (1970) (class action continued although named plaintiff's claim was moot because the problem could recur and "Defendant cannot, by his own voluntary conduct * * * deprive the Court of jurisdiction"); *Gaddis v Wyman,* 304 F Supp 717 (SD NY, 1969), *affirmed sub nom Wyman v Bowens,* 397 US 49; 90 S Ct 813; 25 L Ed 2d 38 (1970) (class action continued because of recurrence); *Jenkins v United Gas Corp,* 400 F2d 28 (CA 5, 1968).[3]

---

[3] *See also, Gerstein v Pugh,* 420 US 103, 110, fn 11; 95 S Ct 854; 43 L

But see *Watkins v Chicago Housing Authority,*
406 F2d 1234 (CA 7, 1969).

The cases relied upon by the per curiam opinion
only stand for the proposition that a class action
may continue where the named plaintiff's claim is
moot and where a statute or procedure is chal-
lenged on grounds of constitutionality or misappli-
cation. If a moot claim is continued as a class
action, two reasons usually are present: (1) possible
recurrence of the alleged illegality, and (2) preven-
tion of defendant from stopping a class action and
continuing unconstitutional or illegal practices by
rendering the named plaintiff's claim moot.

The instant case does not fall within either of
the reasons for applying the rule in question.
Recurrence of the illegality presents no problem.
Defendant has not attempted to continue an un-
constitutional or illegal practice by rendering the
named plaintiff's claim moot through settlement.
We are not faced with the picture of a defendant
able to stay out of court perpetually and to circum-
vent judicial resolution of important issues by
settling the individual case of the representative
plaintiff.

Moreover, the character of the instant case is
far different from that of the Federal cases. The
instant case is not concerned with an important
constitutional question as are most of the Federal
cases. Collection of money is the focus here, not an
allegedly unconstitutional practice.

In the factual situation presented by the instant
case, it is especially important that any class
action have proper representatives. As the Court
of Appeals noted, there are special circumstances
present which tend to indicate that potential class

Ed 2d 54 (1975) and *Sosna v Iowa,* 419 US 393; 95 S Ct 553; 42 L Ed
2d 532 (1975).

members may desire not to continue the suit. Proper representatives should be required—not the withdrawn named plaintiffs who are presumably happy with their satisfied judgments.

After fifteen years, this litigation should be given a prompt burial.

I would affirm the Court of Appeals.