**Nellie STOKES, Plaintiff,**

v.

**Garland L. BONIN, Director of the Division of Income Maintenance, Individually and in his official capacity, et al., Defendants.**

**Civ. A. No. 73–439.**

United States District Court,
E. D. Louisiana,
Section "E".

Sept. 1, 1973.

Anne Pardee Buxton, New Orleans, La., for plaintiff

Terry F. Hessick, Dept. of Public Welfare, Baton Rouge, La., Michael Winn, Asst. U. S. Atty., New Orleans, La., for defendants.

CASSIBRY, District Judge:

In this class action, plaintiff has challenged two policies of the Louisiana Division of Income Maintenance: (1) the termination of food stamp benefits on the ground of "failure to prove management," and (2) the failure to provide a fair hearing prior to termination or reduction of food stamp benefits.[1] With respect to the former issue, a dispute has developed between the plaintiff and the state defendants on the question of the obligation of the state defendants to identify the persons who were terminated after January 1, 1972 for "failure to prove management."[2] Because the subclass identification information sought by the plaintiff relates to relief and not to liability, and because a finding of liability on this issue would bear directly on the defendants' obligation to provide information which is indispensable to affording any relief to the subclass, plaintiff has now moved for partial summary judgment, as to liability, on the "failure to prove management" issue.[3] The defendants raise a number of procedural and substantive objections to that motion, as detailed below.

## I. CLASS ACTION ISSUES

One whole constellation of difficulties centers on the fact that this suit has not yet been certified as appropriate for class action treatment, Fed.R.Civ.P. 23(c)(1). Moreover, since the time this suit was filed, plaintiff has changed the definition of the affected class, a matter to which the federal defendant takes exception. Next, since the plaintiff has received much of the relief she sought, it is alleged that she is not a proper representative of the class. Finally, the plaintiff seeks to vindicate the rights of both public assistance (PA) and nonpublic assistance (NPA) households with respect to the "failure to prove management" policies of the Division,[4] although she herself is a PA case only. This, both the state and federal defendants argue, is not permissible, since there is no case or controversy as to NPA households on the present record.

These matters, I believe, are not so substantial as to make a ruling on the plaintiff's motion inappropriate at this time, although additional rulings on some of the class issues are required. I find that the plaintiff's restriction of the class to those who were initially denied or subsequently terminated from food stamp benefits for failure to prove management after January 1, 1972 is perfectly proper; and that group appears to constitute a well-defined class of persons adversely affected by an identical regulatory provision, in excess of thirty thousand persons. Under such circumstances, all the requirements of Rule 23(a) appear to be satisfied; and the only question with regards to Rule

1. Following institution of this action, Plaintiff Stokes was afforded an opportunity for a fair hearing and benefits pending the hearing decision. The hearing was held on April 4, 1973, and the decision was rendered on May 28, 1973. That decision held that Plaintiff Stokes' termination for "failure to prove management" was not correct," at 489.

2. The state defendants maintain computer records of terminations only back to January 1, 1972. For this reason, plaintiff has accepted a definition of the "failure to prove management" subclass as including all households terminated since that date.

3. This motion is limited to the question of the the validity of the state defendants' "failure to prove management" policy. Plaintiff has not moved for summary judgment as to the liability of the state defendants on the fair hearing issue because a question remains as to waivers alleged to have been granted by the federal defendants to the state defendants.

4. The basic unit of eligibility in the food stamp program is the "household." Public assistance households are those in which all persons in the unit receive categorical assistance (such as AFDC), while non-public assistance households are those in which one or more members of the unit do not receive categorical assistance, but the household qualifies for food stamps because its income falls below the maximums established pursuant to the Act.

23(b) comes in connection with whether common questions of law or fact "predominate" as required by Rule 23(b)(3). I do not see how the appropriateness of declaratory or injunctive relief under the provisions of Rule 23(b)(1)(B) and Rule 23(b)(2) can seriously be disputed. Likewise, I do not believe that the Government's suggestion that plaintiff is not an adequate class representative of PA households has merit. The cases are legion to the effect that the fact that she personally has been afforded relief neither moots the claims of the class nor disqualifies her from asserting them.[5] On the other hand, the position that she can not vindicate the interests of NPA households seems well taken: the policy as applied to such persons does not affect her, and a decision as to its legality with respect to such households would at this stage be no more than an advisory opinion. In summary then, ex proprio motu, I hereby certify this suit as a proper class action under Rule 23(b)(1)(B) and Rule 23(b)(2) on behalf of all public assistance households which were terminated from or denied food stamps on or after January 1, 1972 for "failure to prove management." Although it is possible that the non-public assistance households will be provided a suitable champion in the very near future since a motion to intervene an NPA plaintiff in this action is now pending before me, as of this point in time, I shall confine my ruling on the legality of the policy in question to public assistance households, to the extent that I can.[6]

5. *See, e. g.,* Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28; Thomas v. Clarke, D.Minn.1971, 54 F.R.D. 245; Davis v. Caldwell, N.D.Ga.1971, 53 F.R.D. 373; Gatling v. Butler, D.Conn.1971, 52 F.R.D. 389; Crow v. California Dept. of Human Resources, N.D. Cal.1970, 325 F.Supp. 1314; Gaddis v. Wyman, S.D.N.Y.1969, 304 F.Supp. 717.

6. The Department claims that under either Social Security Act regulations relative to public assistance households or Food Stamp Act regulations relative to non-public assistance households, it is free to question the eligibility of such households solely because their reported expenses exceed their reported

## II. SUBSTANTIVE ISSUES

The food stamp program was intended by Congress to supplement the budgets of low-income households in order to permit them "to purchase a nutritionally adequate diet through normal channels of trade." See 7 U.S.C. § 2011. The eligibility schedules promulgated by the Secretary of the United States Department of Agriculture (USDA) reflect a determination that a household whose income falls below the maximum listed for a family of its size is unable to purchase a nutritionally adequate diet. Household eligibility having been established, a recipient provides information about her expenses so that the state agency can determine the purchase price to be paid for the stamps by the recipient. See 7 CFR § 271.3(c)(1)(ii). The value of the food stamps issued to the recipient is the amount determined by the Secretary to be the cost of a nutritionally adequate diet for a family the size of the recipient's. See 7 U.S.C. § 2016(a). In other words, the amount the recipient pays for the stamps is based in part on the family's expenses, and the amount of stamps received by the household is based on what the family needs to purchase an adequate diet.

The logic of the system breaks down, however, because in most poor families expenses are not met on a regular basis and there is a constant picking and choosing between what bills to pay now and what bills to wait on. Operating so close to the margin of solvency, the plaintiff asserts, makes it impossible as

income. As shall become clear, however, I believe that public assistance households that also receive food stamps and that are terminated from public assistance must be given an opportunity to have their food stamp grants reevaluated in light of the non-public assistance food stamp guidelines before they can be found altogether ineligible for food stamp benefits. In order to resolve this issue, however, I was obliged to assess the validity of this interpretation of the NPA food stamp regulations as applied to the recertification of former PA households. Obviously, however, my assessment in that limited context does have wider ramifications.

a practical matter for many food stamp recipients to state what expenses are paid regularly. The form on which a recipient reports expenses does not specify that expenses are to be reported only if paid. Much confusion develops because the state defendants apparently assume in at least some cases that the expenses listed by the recipient are in fact paid on a regular basis.

Under the terms of the Food Stamp Act of 1964, the only relevant criteria for eligibility are "household income and other financial resources." 7 U.S.C. § 2014(b). The state's "failure to prove management" regulation, plaintiff claims, effectively adds to these criteria by requiring that in addition to the foregoing, the recipient be able to demonstrate specifically how she is able to meet expenses—where expenses exceed reported income. Plaintiff alleges that the insertion of this additional criterion violates the Food Stamp Act.

The state defendants dispute the interpretation that plaintiff places on their regulation, and denies that in practice it is applied in the manner alleged by plaintiff. The Division argues that the eligibility criteria for public assistance cases allows it to refuse certification to households where reported expenses exceed reported income; and that since the eligibility of such households for food stamps is derivative from their eligibility for public assistance, it may deny them food stamps as well. The Division now states that in the future it will treat all "failure to prove management" cases as violative of applicable public assistance regulations rather than treat them directly under the food stamp guidelines.

The utilization of the "failure to prove management" criterion in public assistance cases by the Division, in this indirect fashion is justified by the following argument:

The USDA food stamp regulations, at 7 CFR § 271.3(b) provides that:

> Households in which all members are included in a federally aided public as-

sistance or general assistance grant shall, if otherwise eligible under this subchapter, be determined to be eligible to participate in the program while receiving such grants without regard to the income and resources of the household members.

Even though the above regulation establishes that all public assistance and general assistance households are entitled to food stamps, the Division argues that the regulation does not stand for the proposition that income and resources are to be ignored in determining the amount of the grant and the purchase price requirement. It bases this assertion on 7 CFR § 271.4(a)(1) which provides that:

> The State agency shall provide for the certification of households in which all members are included in a federally aided public assistance or general assistance grant, solely *on the basis of information contained in an affidavit and the assistance case file.* [emphasis added].

The affidavit and assistance case file will, in accordance with both Social Security and Food Stamp regulations, contain all information on both income and resources, and on income deductions and expenses, necessary to calculate the amount of the food stamp grant and the purchase requirement, which are computed in the same manner for both public assistance and non-public assistance households. If income or income deduction information appearing in the assistance case record and/or the affidavit is incomplete, unclear, or inconsistent, then the worker must seek substantiation or verification in order to clarify the situation. Such procedure is required by Social Security regulations:

> (3) When under the simplified method, statements of the applicant or recipient are incomplete, unclear, or inconsistent, or where other circumstances in the particular case indicate to a prudent person that further inquiry should be made, and the individual cannot clarify the situation, the State agency will be required to ob-

tain additional substantiation or verification. In such instances, verification is obtained from the individual or the agency's records, or with the individual's knowledge and consent, from another source.

45 CFR § 205.20(3)

(12) In determining initial and continuing eligibility:

\*   \*   \*   \*   \*   \*

(iii) Verification of circumstances pertaining to eligibility will be limited to what is reasonably necessary to ensure the legality of expenditures under this program.

Under the requirements of this subparagraph:

\*   \*   \*   \*   \*   \*

(c) When information available from the applicant or recipient is inconclusive and does not support a decision of eligibility, the agency explains to the individual what questions remain and how he can resolve or help to resolve them, what actions the agency can take to resolve them and the need for their resolution if eligibility is to be established or reconfirmed. If the individual is unwilling to have the agency seek verifying information, the agency, unable to determine that eligibility exists, denies or terminates assistance.

45 CFR § 206.10(a)(12)

Although the concept of negative income is not, per se, a public assistance policy, the Division claims that such negative income appearing in a public assistance case record is just as much an inconsistency for public assistance purposes as it is for food stamp purposes [compare 45 CFR § 205.20(3) with 7 CFR § 271.4(a)(2) and FNS (FS) Instruction 732-1-IV-A-2], and for the same reason: if a household has more expenses than income, then either the expenses are not being paid on a regular basis, or are being paid on a regular basis out of income that has not been reported.

Thus, the Division argues, if a negative income situation occurs with regard to a public assistance food stamp household, then the public assistance record should be investigated and income and income deductions recorded therein and in the affidavit should be verified for continued certification of the public assistance case. Since eligibility information from the public assistance case is used to determine food stamp eligibility, it is asserted that the food stamp grant and the public assistance grant are directly connected. Since any action taken on the public assistance case will directly affect the substance of the accompanying food stamp grant, the Division asserts that to investigate negative income under the food stamp provisions is no more violative of a recipient household's rights then to investigate inconsistencies under the public assistance provisions of the Social Security Law, provided the findings are applied uniformly to both the food stamp grant and to the public assistance grant.

Although by Memorandum No. 73-82 the defendant Bonin has deleted the negative income or "failure to prove management" policy as to public assistance food stamp recipients embodied in Section 12-252, the Division apparently does not concede the invalidity of that policy as applied to such households. Instead, the Division felt that in applying Section 12-252 to public assistance cases, there was a danger that the worker might carry through the investigation and take appropriate action only with regard to the food stamp grant, and neglect to apply the findings to the public assistance case as well. To eliminate such a possibility, all negative income situations or other inconsistencies were to be investigated from the point of view of the public assistance case, using appropriate Social Security Law and H. E.W. Regulations, instead of USDA Regulations or State food stamp policies. Memorandum No. 73-82 makes this policy unmistakably clear:

Income Maintenance workers responsible for assistance payments cases are reminded that eligibility for assistance payments is questionable in those

cases where monthly expenses exceed monthly income (negative income cases). In such instances a thorough investigation should be made to determine whether all income was reported.

Thus the plaintiff in this case, and the class she represents, are still faced with the precise policy which gave rise to this litigation. I must now determine whether the state defendants' position in this regard is correct.

There are a number of difficulties with the state defendants' argument. Two specific points, highlighted by the case of the named plaintiff, are whether in comparing expenses to income (1) the worker considers the expenses listed on the eligibility and/or redetermination forms or only that portion of them verified by the recipient to have been paid on a current basis; and (2) the worker requires verification of only the recipient's regularly recurring income or of non-recurring income as well. As to both points, it is clear that the challenged state regulations make no distinction between "expenses" in general and "currently paid expenses," nor between "income" and "regularly recurring income," in their instructions to Division employees regarding the proper procedure to follow in "negative income" situations. Instead, the state regulation—as it read when applied to the plaintiffs in this case—provides as follows:

12–252  CASES IN WHICH NEGATIVE INCOME IS REPORTED (PA AND NPA)

Cases with negative income are those in which the total amount of deductions reported is greater than the total amount of net income reported. It is expected that these cases, whether PA or NPA households, will be thoroughly investigated prior to certification and that if verification of management, income, etc., cannot be obtained, that the case will not be certified for participation in the Food Stamp Program.

Should cases with negative income be submitted to the State Office, the budget will be computed and the ATP Card issued to the client. Form FSP–5–S/M sent to the parish will include a message "Shelter amount and/or other too large." When Form FSP–5–S/M is received in the parish certification office with this message, the worker shall conduct a complete investigation. This would include a thorough discussion with the client regarding management and appropriate documentation. . . .

In short, this regulation presents the caseworker with a mandate to see to it that this class of cases is "thoroughly investigated," and to demand "appropriate documentation" "regarding management" from the food stamp applicant; and at least in the case of Ms. Stokes, this regulation was seen as a basis for requiring her to verify sources of non-recurring income that were clearly excludable even under the more stringent food stamp regulations applicable to NPA households, 7 CFR §§ 270.-3(c)(ii)(a)–(g), and to distinguish between regularly paid and incurred expenses.

■  The post hoc justification for this procedure is that the social security regulations underlying the public assistance grant upon which the food stamp award was based would have permitted the Division to treat a negative income situation as one where the information provided was "incomplete, unclear or inconsistent, or one that would indicate to a prudent person that further inquiry should be made." 45 CFR § 205.20(3). I need not pass on that point, however, for I am of the opinion that the conclusion that the Division would draw from this—namely that those persons found ineligible for public assistance would thereby automatically become ineligible for further food stamp benefits—is not correct. The provision dealing with the eligibility of PA households for food stamps is clearly intended to simplify the enrollment of such units into the program, in the reasonable belief that most if not all of them stood in need of

that additional service. That does not mean either in logic or law, however, that only such households were to receive food stamp benefits, or that the failure of a household to meet such guidelines provides a quick, efficient means of excluding it from those benefits. Quite the contrary, it is not a prerequisite to receive food stamps that a household be on public assistance; so that a finding that a household is ineligible for public assistance would not determine whether 'it should qualify for food stamps. Instead, that separate question would have to be answered with reference to the NPA sections of the Food Stamp Act Regulations. In making that determination, the question would be whether information which I may assume is inadequate to allow a household to remain on public assistance is also insufficient to allow it to continue to receive food stamps. After due consideration, I am of the belief that information inadequate under the Social Security Act would nonetheless suffice for Food Stamp Act purposes.

That portion of the USDA Regulations dealing with the eligibility of NPA households contains the following provision:

(c) *Income and resource eligibility standards of other households. Each State agency shall apply the uniform national income and resource standards of eligibility* established by the Secretary to determine the eligibility of all other applicant households, including those in which some members are recipients of federally aided public assistance or general assistance.

7 CFR § 271.3(c) (emphasis added). In addition, the USDA Regulations contains a provision dealing with the certification of households, which provides in pertinent part as follows:

(a) *Household certification.* . . .

(2) *Certification of other households.* The State agency shall provide for the certification of other households by:

(i) *Completion of the Application for Participation;*

(ii) An interview at certification and recertification with the applicant or his authorized representative in a personal contact in the office, in a home visit, or by a telephone call . . .; and

(iii) Verification of income upon initial certification and, *if the amount of household income has changed substantially or if the source of the income has changed, upon recertification.* Verification is required for other factors of eligibility only to the extent that the information furnished by the applicant is *unclear, incomplete, or inconsistent or otherwise raises doubt concerning any factor affecting eligibility or the basis of coupon issuance.* In any case where a household indicates that it has income so low that there is a likelihood that a change must occur in order for the household to continue to subsist as an economic unit, verification of factors necessary to substantiate the facts of eligibility is required unless expenditures and income are so stable as to indicate that the household could maintain this level of existence for an extended period of time. At least one collateral contact is mandatory in cases of this type. . . .

7 CFR § 271.4(a)(2)(i)–(iii) (emphasis added). A perusal of these provisions reveals that § 271.3(c) predicates eligibility for food stamps solely on the income and resources available to a suitable household. Once the household's income and resources have been found low enough, it is not to be examined upon recertification unless the amount of the income has changed substantially or its source has changed. No mention is made of the requirement justified by reference to Sections 12–251 and 12–252 of the state regulations that expenditures not exceed income in order that the household's continued eligibility remain unquestioned. The reason for this appears to be quite simple: a household

with both a low income and expenses in excess of that figure obviously stands in even greater need of food stamps than the "well managed" household; for a household in such precarious financial circumstances will be under even greater pressure to allocate its resources to items other than a nutritionally adequate diet than would a similarly impoverished household living within its means.

The Division insists, however, that the report of expenditures in excess of income should entitle it to assume either that the household's reported figures are in error or that the information it has been supplied is "unclear, incomplete, or inconsistent or otherwise raises doubt concerning any factor affecting eligibility or the basis of coupon issuance." 7 CFR § 271.4(a)(2)(iii). In this respect, the Division relies most heavily on an instruction issued by the Food and Nutrition Service (FNS) to state agencies, to be used in preparing state plans for the Food Stamp Program. That instruction provides in pertinent part:

FNS (FS) INSTRUCTION NO. 732–1–

(IV–A–2) If the source of income has changed [since initial certification] or the amount of income reported has changed substantially, verification of income is required.

(IV–B) *Questionable Information.* Verification of other eligibility standards is required only when the statements of the household as set out in the application are unclear, incomplete, or inconsistent in any manner that would require an ordinarily prudent certification worker to question any factor affecting eligibility and basis of coupon issuance. In such cases all questionable factors affecting eligibility and basis of coupon issuance must be verified through the point where a firm determination can be made that the applicant is or is not eligible for participation in the Program *at some level of issuance.*

(IV–C) *Very Low Food Stamp Income.* Certification workers should take great care in handling households which claim an income so low there is a likelihood that a change must occur in order for the household to continue to exist as an economic unit. If a household claims a low income in comparison to family size for an extended period, this may indicate an inconsistency in and of itself and it should be examined thoroughly. However, a household whose income is stable, but low because of fixed expenditures and which could be expected to maintain its level of existence for an extended period of time, would not necessarily constitute an inconsistency.

(emphasis added). Based on the above-quoted sections of the Code of Federal Regulations and the Federal Food Stamp Program Instructions, the Division argues that it can be reasonably inferred that a household which reports negative income (that is, reported monthly expenses in excess of reported monthly income) falls into the category of cases in which there exists an inconsistency, and in which income and expenses must be verified before the household can be certified. It also maintains that if, on the face of the food stamp application, a household must pay out more monthly expenses than it has monthly income, the household would not be able to exist for an extended period of time as a stable economic unit; and it asserts further that such an inference was drawn by the Food and Nutrition Service in FNS (FS) INSTRUCTION NO. 732–1–C, Paragraph 2, as follows:

When a household reports *income deductions* (Section III–I–3) which are near to or exceed income, the certification worker may consider the household's expenses inconsistent with its reported income and resources and therefore require verification of income and *income deductions.* A household whose application contains unclear, incomplete or inconsistent in-

formation will not be certified until the questionable items have been clarified and resolved.

(emphasis added). The above instruction, clearly based on the Code of Federal Regulations, recognizes the concept of "negative income" and states that, when such a situation exists on the face of the application, verification of income and income deductions will be required by the State agency. Section 12–251 of the State Manual embodies these instructions verbatim.

But I believe that the state defendants go too far in insisting that the existence of "expenses" in excess of "income" is "inconsistent" within the meaning of FNS (FS) INSTRUCTION NO. 732–1–C–2. It is only when a household reports "income deductions" that are near to or exceed income that an inconsistency arises; and the phrase "income deductions" as used in the FNS Instructions, as well as the USDA Regulations, is a term of art and not merely the semantic equivalent of "expenses." "Income deductions" has reference to a limited set of deductions, essentially encapsuled in 7 CFR § 271.3(c)(iii), that a household may use to reduce its net income as used to calculate its rate of payment for food stamps. These deductions are generally intended to base the food stamp purchase requirement on the actual amount of money available to the household to spend on a nutritionally adequate diet, and to encourage it to continue to make certain extraordinary expenses in such areas as shelter, education and medical care without being penalized for so doing in the Food Stamp Program. See generally, 7 CFR §§ 271.-3(c)(i)–(iii). It is only when this limited class of deductions is inordinately large that an inconsistency arises for food stamp purposes; and the situation where expenses in general exceed income

is simply not encompassed within the language of this section. Any interpretation of the Department to the contrary is erroneous.

The inconsistency of the Division's "failure to prove management policy with the provisions of the Food Stamp Act is best seen by viewing it in its application to those, such as the named plaintiff, who receive Aid to Families with Dependent Children (AFDC). In Louisiana, an AFDC household receives only 56 per cent of the amount determined under state standards to be the minimum compatible with decency and health. In other words, the grant only covers 56 per cent of the household's basic expenses; any recurring income from a source other than the grant is applied to reduce the 56 per cent figure. Thus the reported expenses of Ms. Stokes and of every other AFDC recipient must almost inevitably exceed its reported income. To cut an AFDC household off food stamps, because its reported expenses exceed its grant of 56 per cent of its need, clearly contravenes the purpose of the food stamp program to provide a nutritionally adequate diet for those too poor to afford it, 7 U.S.C. § 2011.

The simple truth that eludes the state defendants here is that where a household is obliged to subsist on an income which is only 56 per cent of its minimum standard of need, the only way to survive is either not to pay all bills or else to utilize some form of nonrecurring income with which to pay them.[7] Since under the applicable USDA Regulations not all income need be reported, 7 CFR § 271.3(c)(ii), and since the Division has not chosen to limit the expenses it requires to be itemized to those regularly paid, it may not use a gap between "income" and "expenditures" to create an "unclear, incomplete, or incon-

7. The state defendants do not claim that their grant of 56 per cent of need to such households is per se "so low that there is a likelihood that a change must occur in order for the household to continue to exist as an economic unit." FNS (FS) INSTRUCTION NO. 732–1–IV–

C. Certainly it would be incongruous if the defendants could use the low level of support they provide to such households to justify additional restrictions on the availability to them of food stamp benefits.

sistent" or otherwise suspicious situation, within the contemplation of Section 271.4(a)(2)(iii). The reasons for such a gap are both obvious and inevitable, and the Division must draft a more precise regulation requiring very different information before it can attribute any significance to such a state of affairs.[8]

In summary, several things are clear. First, although the Division now seeks to justify the application of a "failure to prove management" criterion to public assistance household food stamp cases by reference to various Social Security Act Regulations, it did not assert that rationale at the time it originally acted. More importantly, it did not act in conformity with those regulations in processing the supposedly ineligible public assistance households, especially with the requirements of those regulations having to do with fair hearings, 45 CFR § 205.10(a) and 45 CFR §§ 206.10(a)(4), (7) & (8), and the continuation of benefits pending the outcome of such hearings, 45 CFR §§ 205.10(a)(5)(i)(b) & (iii)(a)(1). Thus the Division cannot justify its actions by reference to such regulations.

■■ But further, I believe that the Division is in error when it seeks to apply the substantive provisions of the Social Security Act Regulations to a public assistance food stamp case eligibility determination. Instead, I am of the opinion that if a household loses its nearly automatic public assistance entitlement to food stamps, 7 CFR §§ 271.3(b) & 271.4(a)(1), it must be given an opportunity to have its continued eligibility for benefits redetermined in accordance with the applicable food stamp regulations for non-public assistance households before it can be terminated. In making that determination, the Division should bear in mind that its failure to prove management policy, as presently applied, is impermissible to the extent that it allows eligibility to be questioned solely on the basis of a gap between reported income and reported expenses. Finally, even in those instances where the state defendants' policy is acceptable, see FNS (FS) INSTRUCTION NO. 732–1–C–2, any unexcusable failure to comply with the provisions of the USDA Regulations relative to notice of adverse action, the right to a fair hearing and the continuance of benefits pending that administrative determination, 7 CFR §§ 271.1(n)(i)–(iv) & 271.1(o)(2)–(6) would entitle the plaintiff class to at least declaratory and injunctive relief.[9]

■ At this juncture, however, significant procedural problems are posed by the class action aspect of this litigation. Counsel for plaintiff makes too much and counsel for defendant too little of the treatment afforded Ms. Stokes in this case. Putting the fair hearing issue to one side,[10] there is not suffi-

---

8. Even if "expenses" were taken to be a fair measure of "net income," so long as those expenses did not exceed the national standards of need set forth by USDA regulations, ineligibility would not be established. Instead, only an upward adjustment in the price such households should pay for their food stamps would be indicated. Yet a finding of ineligibility has been the inevitable result of an unexplained excess of expenses over income, apparently because the state defendants do not believe that the halfway measure of an increase in the coupon purchase price is sanctioned by the USDA regulations. The harshness of this result does not seem to be in keeping with the humane purposes of the Food Stamp Act and appears to be at least debatable in light of the last sentence of FNS (FS) INSTRUCTION NO. 732–1–IV–B (at p. 493, *supra*); but

that issue has not been squarely presented to me and I decline to pass on it at this time.

9. The particulars of relief, including the question of remedial benefits, for past violations are not dealt with in this motion, and I reserve them for consideration at a later time. The separation for decision of the liability and relief questions as to the "failure to prove management" issue is particularly appropriate inasmuch as the state defendants have third-partied the Secretary of the United States Department of Agriculture on the question of who, as between the State of Louisiana and the USDA, should bear the cost of remedial relief. I have granted the federal defendants additional time in which to answer, up to and including September 23, 1973.

10. It appears to be uncontroverted, however, that the fair hearing afforded Ms. Stokes was

cient evidence before me at present to sustain a ruling that a significant portion of the entire class of terminated PA households would in fact have been eligible for food stamp benefits under a program applying the correct legal standards to determine eligibility. It does appear, however, that the plaintiff class is entitled to a declaratory judgment to the effect that the state may not question the continued eligibility of public assistance food stamp households without directly challenging the household's public assistance eligibility under the applicable provisions of the Social Security Act Regulations, in proceedings providing the full panoply of procedural guarantees that those regulations envision. Such a judgment should also provide that the termination of a household from public assistance does not automatically terminate it from food stamps as well; but instead requires that the household be given an opportunity to have its eligibility redetermined in accordance with non-public assistance food stamp guidelines before it is terminated. Finally, the judgment should state that the non-public assistance guidelines do not permit the Division to question the continued eligibility for food stamps of a former public assistance household seeking recertification under non-public assistance food stamp guidelines solely on the basis that reported expenses exceed reported income; and that such a policy is inconsistent, with the Food Stamp Act. The plaintiff class is also entitled to an order requiring the defendant Bonin to disseminate this information to responsible officials in the Division.

However, an injunction ordering the state defendants to conform their behavior to my ruling, or an order requiring them to amend State Reg. Nos. 12–251 & 12–252 must await a showing by plaintiff more substantial than that thus far presented that those defendants will not voluntarily adhere to these standards.[11] Such a showing might be made by demonstrating that a significant proportion of the plaintiff class has been subjected to challenges by the Division similar to those addressed to Ms. Stokes. Counsel for plaintiff shall prepare an appropriate notice and order for my consideration.

The Division strenuously urges, however, that its legitimate interest in preventing fraudulent activities in connection with the Food Stamp Program[12] will be completely thwarted unless it is allowed to investigate situations where a household's reported expenses exceed its reported income. For the reasons I have detailed above, I reject this contention in its broad form; but in so doing I do not wish to be understood as precluding the Division from taking such action in the "income deduction" situation, properly interpreted, that I discussed above. Nor do I wish to prevent the Division from attempting to draft a regulation, suitably narrow in scope, that would permit it to discern households where the unit's apparent income and resources almost certainly could not be reconciled with its regularly paid expenditures, and that would allow it to investigate such situations, and to take appropriate action.

the first such hearing conducted under the auspices of the Food Stamp Program since its inception. Thus the denial of the due process rights embodied in the fair hearing provisions of the USDA Regulations, primarily 7 CFR §§ 271.1(n) & (o), appears to be common to all members of the plaintiff class. The allocation of responsibility for that state of affairs as between the state and federal defendants has yet to be determined, so the issue of the appropriate relief for the situation is not presently before me. *See* notes 3 & 9, *supra.*

11. As the state defendants correctly point out, Sections 12–251 & 12–252 do not *require* the termination of food stamp grants on the basis that negative income exists, nor upon a close reading do they even *require* that such situations be investigated prior to recertification, except in the case of unusually large "income deductions," where such an inquiry is legitimated by the federal regulations themselves. Thus the challenged provisions are not facially invalid.

12. *See* 7 U.S.C. §§ 2019(b), (e), & (g).

I shall reserve my ruling on whether to modify the protective order previously entered in this case until after the hearing on the motion to intervene set for September 12, 1973. For the convenience of all parties, I would like to have arguments on both questions presented to me at that time.

It is so ordered.