James David MORROW, Plaintiff,

v.

Scott BASSMAN et al., Defendants.

No. C-3-79-260.

United States District Court, S. D. Ohio, W. D.

June 3, 1981.

588

James David Morrow, pro se.

William H. Wolff, Sr., Dayton, Ohio, Henry A. Arnett, Columbus, Ohio, for defendants.

RICE, District Judge.

DECISION AND ENTRY ON OUT-STANDING MOTIONS; DEFEND-ANTS, KREACHBAUM AND CEN-NAMO, DISMISSED AS PARTY DE-FENDANTS; CERTAIN DUTIES RE-QUIRED OF PLAINTIFF AND RE-MAINING DEFENDANTS WITHIN STATED PERIOD OF TIME; CON-FERENCE SET

## I. *BRIEF STATEMENT OF THE CASE*

Plaintiff brings this action under 42 U.S.C. § 1983, alleging that he has been unlawfully denied food stamp and ADC welfare benefits.

Specifically, Plaintiff alleges that the individual Defendant Bassman, a caseworker for the Montgomery County Welfare Department (MCWD), unlawfully denied Plaintiff's application for food stamp assistance on February 14, 1978, and that, following a "successful" appeal of that denial, Bassman continued to deny food stamp assistance to Plaintiff until Plaintiff was no longer eligible to receive same (i. e., when Plaintiff became employed in August, 1978). Plaintiff also alleges that the individual Defendant Kreachbaum, a hearing officer for the Ohio Department of Public Welfare (ODPW), has unlawfully failed or refused to enforce his decision on Plaintiff's appeal from the denial of food stamp assistance.

Further, Plaintiff alleges that the individual Defendant Lauer, an MCWD caseworker, unlawfully denied Plaintiff's application for ADC assistance on March 14, 1978, and that, following a "successful" appeal of that denial, Lauer continued to deny ADC assistance to Plaintiff until Plaintiff became ineligible. Plaintiff also alleges that the individual Defendant Cennamo, an ODPW hearing officer, has unlawfully failed or refused to enforce his decision on Plaintiff's appeal from the denial of ADC assistance.

Plaintiff currently seeks leave to amend his complaint to allege an unlawful delay or delays between the time at which Plaintiff first sought to apply for food stamp assistance, the time at which Plaintiff was permitted to apply, and the time at which the decision on his application for food stamp assistance was rendered by the Defendant Bassman. Plaintiff also seeks to add the MCWD, ODPW, and Montgomery County Commission (MCC) as parties-Defendant, for their participation or concurrence in the conduct of the individual Defendants.

Plaintiff demands declaratory relief and money damages in excess of $10,000.00.

## II. *PROCEDURAL POSTURE*

There are six motions outstanding at the present time, to wit:

1. The motion to dismiss by the individual Defendants Kreachbaum and Cennamo for reason that Plaintiff's complaint (as unamended) fails to state a claim against them, in that: (a) the complaint fails to allege deprivation of a *federal* right; (b) state hearing officers have no duty to enforce their decision; and (c) state hearing officers are absolutely immune from liability;

2. The motion *for summary judgment* (after answer) by the individual Defendants Bassman and Lauer for reason that there is no set of genuinely disputed or disputable facts presented upon which they might be held liable, in that: (a) Bassman's initial and post-appeal denials of food stamp benefits were lawful, due to Plaintiff's own failure to verify statements in the application for benefits; and (b) Lauer's initial denial of ADC assistance for Plaintiff was affirmed on appeal, and the post-appeal denial was in accordance with the order following reconsideration of the appeal;

3. The motion to strike Plaintiff's "amendment to memorandum (by Bassman and Lauer) contra the Bassman/Lauer motion for summary judgment" (motion to strike being denominated as "reply to Plaintiff's amendment") for reason that said amendment was not timely filed and was filed without leave of court;

4. Plaintiff's motion for leave to amend his complaint in the manner previously described;

5. Plaintiff's motion for summary judgment in his favor on the amended complaint; and

6. The motion to dismiss by the MCC and MCWD (to be added as parties-Defendant in the amendments to the complaint) for reason that they have not been served as required by law, are not subject to vicarious liability, and are immune from an award of money damages.

### III. *JURISDICTIONAL PERIMETERS*

Before proceeding to the merits of the individual motions, this Court must inquire into its subject matter jurisdiction over the range of potential claims which Plaintiff may be seeking to assert under the allegations in his complaint.

In paragraph 3 of the complaint, Plaintiff alleges that his cause "arises under the Constitution of the United States, including but not limited to the Fourteenth Amendment; the Civil Rights Acts, including but not limited to 42 U.S.C. § 1983; the Constitution of the State of Ohio; the laws of the State of Ohio; the Ohio Public Assistance Manual; and, the Food Stapm [sic] Manual." In paragraph 4, Plaintiff alleges that "Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(1)(2)(3); 28 U.S.C. §§ 2201 and 2202." Sections 2201 and 2202 provided the Court with jurisdiction to render declaratory and ancillary relief *if* the case involves a controversy otherwise within the Court's jurisdiction. Therefore, it must first be determined whether this Court has jurisdiction under sections 1331 or 1343(1)–(3).

■ Inasmuch as no class-based discriminatory animus or conduct by Defendants is alleged, and no other colorable infringement on equal protection rights can be construed from the complaint, no cause of action is stated under 42 U.S.C. § 1985. Therefore, this Court cannot exercise jurisdiction under section 1343(1)–(2). *Cf. Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977). The same defect precludes this Court from exercising jurisdiction herein under that part of section 1343(3) which provides jurisdiction in cases redressing the deprivation of rights secured "by any Act of Congress providing for *equal rights.*" The remaining possibilities are that this Court might have jurisdiction (a) under that part of section 1343(3) which provides for jurisdiction in cases redressing the deprivation "of any right ... secured by the Constitution of the United States," or (b) under section 1331, which establishes this Court's general federal question jurisdiction.

It does not appear to unduly restrict or otherwise do violence to the unamended complaint (such as it is) to suggest that Plaintiff's 14th Amendment claim can be framed as follows: The denial of food stamp and ADC benefits was the result of conduct by the Defendants inconsistent with existing state and federal laws and regulations governing the issuance of such benefits and, therefore, amounted to a denial of due process in violation that of clause in the 14th Amendment.

■ There is no question that a claim of deficient procedure would be insufficient for jurisdictional purposes under section 1343(3), if the procedural defects in disposition of a welfare application were predicated *solely* on inconsistency between the procedures and standards followed by a welfare department and those required by statute or regulations promulgated thereunder. In such case, the claim would not be based upon rights "secured by the Constitution," and (as indicated above) not in respect of federal statutes "providing for equal rights." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Where, however, the defects are predicated on inconsistency with the minimum procedures that are *constitutionally required*, a sufficient constitutional claim would be presented for purposes of section 1343(3) jurisdiction. *Serritella v. Engelman*, 339 F.Supp. 738, 745–46 (D.N.J.1972). In other words, in order for this Court to have jurisdiction over the present cause under section 1343(3), the deprivation of procedural rights

at issue must be in the nature of noncompliance with that which the *constitution* demands, and not merely predicated upon inconsistency with federal or state procedural statutes or regulations.

As a constitutional generality, it has been said that "the quantum and quality of the process due in a particular situation depends upon the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (rejecting lower court's requirement of various procedural safeguards in parole denial because they "would provide at best a negligible decrease in the risk of error"). In the context of preliminary and final denials of welfare benefits, it has been held that the requirements of due process are satisfied by written objective standards for eligibility, the opportunity to present an application indicating eligibility, a statement of reasons for preliminary denial of benefits, and an opportunity for meaningful administrative review prior to final denial. *See, e. g. White v. Roughton*, 530 F.2d 750 (7th Cir. 1976); *Baker-Chaput v. Commet*, 406 F.Supp. 1134 (D.N.H.1976); *Alexander v. Silverman*, 356 F.Supp. 1179 (E.D.Wisc. 1973). The Complaint indicates that Plaintiff was afforded these procedural safeguards up to the point of each "successful" appeal and Plaintiff does not now suggest otherwise.

■ What Plaintiff does appear to ultimately allege, in the way of due process deprivation prior to the determination of each appeal, is the legal conclusion that administrative noncompliance with established procedures and guidelines in itself amounts to a deprivation of due process, even though said rules establish requirements in excess of the due process minimum. Such conclusion is incorrect:

> If that approach were adopted, there would be a constitutional procedural due process right to have states adhere to any procedural rules promulgated by them. While such adherence is certainly desirable, every deviation from state proce-

dures cannot be viewed as a federal constitutional violation. Such a holding would make a large volume of state proceedings in the prison setting, in executive proceedings, and in judicial proceedings subject to complaint in the federal courts on due process grounds. We decline to so expand procedural due process. *Bills v. Henderson*, 631 F.2d 1287, 1298–99 (6th Cir. 1980).

This is not to say that, prior to the disposition of each appeal, Plaintiff did not have an entitlement deserving of due process protection in the welfare benefits for which he was allegedly eligible, but which were denied to him. On the contrary, the established standards for eligibility and procedures for determining same required that he be given due process in seeking such benefits. However, having been given the opportunity to apply for benefits under established eligibility standards, and having had the opportunity for meaningful administrative review upon denial of said benefits, it cannot be said that Plaintiff was not afforded all process due under the constitution up to that point. Due process does not require anything more in the administrative determination to deny benefits, and does not otherwise require that each step in such administrative determination result in the correct decision. The mere belief or, indeed, the simple fact that welfare benefits may have been *erroneously* denied does not give rise to a due process claim.

■ But this Court does not thereupon conclude that Plaintiff has not presented a legal claim which, if properly stated, would be cognizable in this Court under section 1343(3) jurisdiction. Plaintiff has alleged that he was entitled to food stamp and ADC assistance, that he was determined to be so entitled by "successful" administrative appeals of preliminary benefit denials, and *that he was thereafter denied benefits.* In this regard, the Complaint suggests that the *post-appeal* denials of benefits may have occurred without notice, hearing, or other applicable due process requirements the result of which might be said to justify the post-appeal benefit denials.

Having determined that the Complaint might suggest, in part, a deprivation of constitutional right following Plaintiff's welfare appeals, sufficient for jurisdiction under section 1343(3), there need not be further inquiry into the possibility of jurisdiction under section 1331. The potential claims of pre- or post-appeal violation of federal laws might amount to a cause of action under 42 U.S.C. § 1983. Even though such cause would not be directly cognizable herein under section 1343(3), *see Maine v. Thiboutot*, 448 U.S. 1, 8 & n.6, 100 S.Ct. 2502, 2505 & n.6, 65 L.Ed.2d 555 (1980), it would appear to be pendent to the potential constitutional claim which this Court may hear under section 1343(3). *Hagans v. Lavine*, 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). Plaintiff's potential pre- and post-appeal claims of violation of state laws may similarly be heard under the doctrine of pendent jurisdiction. *Id.* at 545–46, 94 S.Ct. at 1383; *see generally*, C. Wright, *Law of Federal Courts* § 19 at 75 (1976). To the extent that the exercise of primary jurisdiction under section 1343(3) might be improvident, the Court notes that primary jurisdiction would appear to alternatively lie under section 1331, particularly, with respect to potential non-constitutional federal law claims under 42 U.S.C. § 1983.

## IV. *MOTIONS DIRECTED TO THE UN-AMENDED COMPLAINT*

### A. *The Cennamo/Kreachbaum Motion to Dismiss.*

■ The Defendant state hearing officers, Cennamo and Kreachbaum, have moved for dismissal of Plaintiff's Complaint against them on three grounds. First, these Defendants contend that no cause of action is stated under section 1983 because no deprivation of a *federal* right has been alleged. However, as indicated in the preceding jurisdictional discussion, the Complaint is capable of construction so as to allege post-appeal deprivation of the constitutional right to due process and pre- and post-appeal noncompliance with federal statutes governing the disposition of wel-fare applications. Although the Complaint does not specifically allege which requisites of due process were foregone or which federal statutes were violated, it is sufficient to place these Defendants on notice that Plaintiff claims some right to relief, based on federal law, growing out of their involvement in the disposition of his welfare applications. Therefore, the Court finds that Defendants' first stated ground for dismissal lacks merit.

Although the Court might proceed to find that a motion to dismiss, under circumstances where the complaint is as vague as the one herein, should be construed and well taken as a motion for a more definite statement, it need not do so in the present case for the following reasons.

■ As the second stated ground for dismissal, these Defendants contend that they have no duty to enforce their decisions on appeals of welfare denials and, therefore, the allegations in the Complaint that they did fail or refuse to enforce their decisions for Plaintiff's benefit are insufficient to state a cause of action against them. The Court agrees. The various state and federal statutes and regulations cited by the respective parties do not indicate that state welfare hearing officers have a duty to enforce their decisions; on the contrary, it appears that the duty *and authority* of a state hearing officer extends no further under either state or federal law than the adjudication and determination of welfare appeals. *See Ohio Admin.Code*, §§ 5101: 1–35–06(G), 5101: 4–11–06(A) (latter rule repealed June 2, 1980 and recodified in substance at § 5101: 4–9–09(F), *see* [1979–80] *Ohio Monthly Record* 4–863 to 4–864, 4–868 [1980–81] *Ohio Monthly Record* 138–139). Because the complaint against Cennamo and Kreachbaum is limited to alleged breaches of an affirmative duty to enforce their decisions for Plaintiff's benefit (Complaint ¶ 2, 10–11, 34–39), and because no such affirmative duty exists as a matter of law, the motion of these Defendants is well taken and sustained upon the ground that Plaintiff has failed to state a viable claim against them.

As the third ground for dismissal, these Defendants contend that they are *absolutely* immune from liability for constitutional delicts by virtue of their adjudication function within the welfare appeals system. This Court again agrees. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that only *qualified* immunity (predicated upon good faith in misconduct or mere error in judgment) would be available for federal administrators, "subject to those exceptional situations where it is demonstrated that *absolute immunity* is essential for the conduct of the public business." *Id.* at 507, 98 S.Ct. at 2911 (emphasis added). In proceeding to delineate certain of the "exceptional situations" in which absolute immunity would apply, the Court discussed administrative adjudications:

> We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suit for damages. The conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court.
>
> \* \* \* \* \* \*
>
> There can be little doubt that the role of the modern federal hearing examiner . . . is "functionally comparable" to that of a judge . . . [T]he process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency.
>
> \* \* \* \* \* \*
>
> [W]e think that the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women. We therefore hold that persons subject to these restraints and performing adjudicatory functions within a federal agency

are entitled to absolute immunity from damages liability for their judicial acts. *Id.* at 512–14, 98 S.Ct. at 2913.

This Court finds that the preceding conclusion and underlying consideration of statutory and regulatory safeguards apply with equal force to the administrative adjudication of *state* welfare appeals in Ohio, and that state welfare hearing officers in Ohio are, therefore, also absolutely immune from liability under section 1983 by virtue of their adjudicative function and responsibility.

Since the Complaint herein affirmatively discloses that Cennamo and Kreachbaum are state administrative hearing officers, then to the extent that the Complaint might be construed to predicate their liabilities on the performance of their functions in said positions, and not simply in the failure to enforce their decisions, the motion of these Defendants is also well taken and sustained upon the additional ground of absolute immunity. The Court is aware that a plaintiff is not required to plead a defendant's lack of immunity in order to state a viable claim under section 1983. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Where, however, as herein, a plaintiff has by allegation made it clear that the defense of absolute immunity is available to a defendant, such plaintiff has, in a sense, "pleaded too much" and his complaint is thereby subject to dismissal upon that defendant's motion pursuant to F.R.C.P. 12(b).

**B. The Bassman/Lauer Motions for Summary Judgment and to Strike.**

The Defendant welfare caseworkers, Bassman and Lauer, have moved for summary judgment on the ground that each of them conformed with the requirements of the law in processing Plaintiff's assistance applications, and that the denial of welfare benefits to Plaintiff was due to Plaintiff's own failure to verify application statements, substantive ineligibility, or failure to exhaust administrative remedies.

Certain procedural matters require consideration prior to discussion of the merits

of the motion for summary judgment by these Defendants. First, Exhibits D through G in support of said motion, referenced in accompanying memorandum as being verified and attached thereto, are not in fact included with the motion as filed in this Court. Although certain of these documents appear to be available to the Court as attachments to other docket entries (i. e., exh. F is exh. B in docket # 5, and exh. G is exh. D in docket # 23), they are not all so available or otherwise uniformly verified. Since it further appears that the omitted items are essential to the motion of these Defendants, primarily with respect to the question of Lauer's liability, final disposition of said motion will be held in abeyance pending submission of all referenced exhibits in the form required by F.R.C.P. 56(e).

Second, these Defendants have moved for an Order of Court striking the "Amendment to Plaintiff's Memorandum" in opposition to their motion for summary judgment. The Defendants' motion to strike (which is styled as a "reply" to the amended memorandum) is based on the fact that the amended memorandum was filed without leave of Court some four months after the original memorandum in opposition. This Court is unaware of any requirement under the Federal Rules of Civil Procedure that "papers" such as Plaintiff's amended memorandum (not constituting a pleading, motion, or affidavit in opposition thereto) be filed only with leave of Court or only within a certain period of time. However, contrary to Plaintiff's contention that no such rule exists, S.D.Ohio R. 3.5.2 explicitly provides:

> Any memorandum contra shall be filed within twenty (20) days from the date of service of the motion and supporting memorandum, or such other period as the Court may require.

Nonetheless, inasmuch as Defendants will presently be given leave to correct omissions in support of their motion for summary judgment (as suggested above), the Court will not now order that Plaintiff's amended memorandum in opposition to the motion for summary judgment be stricken, even though technically untimely in terms of the initial filing date of Defendants' motion.

Finally, the Court notes that *none* of the factual matters raised by Plaintiff's memorandum, amended memorandum, or attachments thereto, in response to Defendants' motion for summary judgment, are supported in the manner required by F.R.C.P. 56. In essence, the affidavit of Plaintiff attached to his initial memorandum does nothing more than state a conclusion of law and aver that there are some *unidentified* issues of fact with respect to said conclusion which preclude summary judgment in Defendant's favor. This is patently insufficient under the "specific facts" requirement of F.R.C.P. 56(e). Moreover, none of Plaintiff's documents are sworn or certified as is also required by the Rules. But, again, inasmuch as Defendants will be given leave to properly support their motion, Plaintiff will also presently be given leave to properly support his opposition thereto.

With the record *in its present condition*, the factual matters set forth in the motion, and memoranda and documents in support thereof and opposition thereto (including representations by memoranda as to the content of missing documents) provide the Court with reason to believe that the Bassman/Lauer motion for summary judgment should be overruled. Thus, should these Defendants decide not to correct or further support their submissions under Rule 56, pursuant to leave presently given, the Court will note that the following scenarios *are at least possible* under the unamended complaint and the submissions already properly on the record, and that the indicated disposition of Defendants' motion would, therefore, be warranted.

First, with respect to the Defendant Bassman and Plaintiff's application for food stamp assistance, it would appear undisputed or undisputable that Bassman denied Plaintiff's application for such assistance on February 14, 1978, due to miscommunication regarding Bassman's need for verification on items of eligibility omitted from the application, said miscommunication causing

the application to standing pending without verification for longer than the maximum period allowed under O.R.C. 5101.54(B). Bassman notified Plaintiff of the denial and the reason therefor, and advised Plaintiff of his right to appeal.

Upon appeal, Kreachbaum determined that the lack of eligibility verification was not due to refusal or other fault on Plaintiff's part, and that the denial was therefore inappropriate. On April 11, 1978, Kreachbaum, in effect, directed the MCWD to disregard the fact of nonverification, and return to the initial application date for purposes of investigating whether Plaintiff had been eligible for food stamps at that time, and determining whether Plaintiff would be entitled to benefits from that time.

Plaintiff did not receive food stamps after the Kreachbaum decision. On or about August 4, 1978, the local agency directed Plaintiff to reapply for food stamps, and he did so through MCWD caseworker Susan Phillips. On September 5, 1978, Phillips denied the post-appeal application for benefits because, again, certain items of eligibility had not been verified. It appears that, in the interim, Plaintiff had ignored a request for verification because he had become employed and therefore thought he was no longer eligible for benefits, even though Kreachbaum's decision would appear to have entitled him to retroactive benefits for the period during which he may have been eligible. Plaintiff did not request a state hearing on Phillips' denial of benefits.

■ Upon this set of facts, the Court perceives certain genuine issues of fact which still exist and which are material to the determination of Bassman's nonliability. Plaintiff contends that during the period between the Kreachbaum decision and his reapplication for benefits through Phillips, Bassman consistently refused to interview Plaintiff or undertake re-examination of Plaintiff's eligibility for benefits pursuant to the initial application. For his part, Bassman contends that proper evaluation of Plaintiff's eligibility was undertaken after

Plaintiff reapplied for food stamps, and that in all other respects Bassman's conduct conformed to the Kreachbaum decision. However, it is possible: (1) that the directive requiring Plaintiff to reapply as a new applicant (patently inconsistent with the Kreachbaum decision), and the three and one half month delay between the Kreachbaum decision and Phillips' investigation might, separately or together, constitute a deprivation of Plaintiffs' rights secured by federal laws governing food stamp programs, 7 U.S.C. § 2011 et seq.; *Stokes v. Bonin*, 366 F.Supp. 485 (E.D.La.1973); and (2) that said three and one half month delay, and the effective denials of the opportunity to apply for assistance during that period, might also constitute a deprivation of constitutional due process, *Custom v. Trainor*, 74 F.R.D. 409 (N.D.Ill.1977); cf. *Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978). Since it is also possible that Bassman may have been responsible for the alleged noncompliance with the Kreachbaum decision, the three and one half month delay, and the effective denials during that period (because, inter alia, it appears that Bassman supervised Phillips' disposition of the August application), it would appear that Bassman's nonliability has not been conclusively shown on the record at this time.

■ Certain other matters raised by Plaintiff's memoranda (including a claim that Plaintiff was not allowed to submit his original food stamp application to Bassman for a 10-day period in December, 1977, and other allegations relating to the potential liability of the MCC, MCWD, and ODPW) are not within the scope of the unamended complaint and are, therefore, irrelevant to the question of Bassman's potential liability under that complaint. On the other hand, Bassman's additional contention that Plaintiff's failure to appeal Phillips' denial of benefits constitutes a failure to exhaust administrative remedies, and therefore conclusively establishes Bassman's entitlement to summary judgment, is also not well taken. While a failure to exhaust may preclude this Court's review of Plaintiff's substan-

tive eligibility for food stamps under state law, or possible violations of established state procedures by Bassman, exhaustion is not a prerequisite to perfection of a cause under 42 U.S.C. § 1983 based on constitutional or federal statutory violations. *McNeese v. Board of Education,* 373 U.S. 668, 676, 83 S.Ct. 1433, 1438, 10 L.Ed.2d 622 (1963).

The matter is only slightly different with respect to the Defendant Lauer and Plaintiff's application for ADC assistance. With the record in its present state, it would appear undisputed or indisputable that Lauer denied Plaintiff's application for ADC benefits on March 14, 1978, because Plaintiff retained real property in excess of eligibility standards (said real property also appearing to be the major unverified item of eligibility at issue in Plaintiff's food stamp request). Lauer informed Plaintiff of the denial and advised him of his appeal rights. Upon appeal, Cennamo determined that Plaintiff did have excessive real property at the time of his application, but no longer retained same at the time his appeal was heard. Therefore, on May 11, 1978, Cennamo overruled the appeal (finding that denial of the application was correct), but ordered that Plaintiff receive retroactive ADC from the date of the state hearing.

Plaintiff thereupon requested reconsideration of the starting date for retroactive assistance. Following a de novo hearing on June 27, 1978, the state reconsideration hearing officer, Gary Rominski, again affirmed Lauer's denial of the initial ADC application. However, in his decision of August 9, 1978, Rominski revised Cennamo's award of retroactive assistance from the hearing date because, upon affirmance of the initial ADC application denial, no application remained pending upon which assistance might be awarded. Rominski advised Plaintiff to reapply for assistance in order that a determination might be made that Plaintiff no longer retained excessive real property. Plaintiff did not reapply for ADC after the date of the reconsideration decision.

On these facts, Lauer would maintain that his conduct was at all times proper and consistent with each determination regarding Plaintiff's ineligibility for ADC. However, Plaintiff contends that, like Bassman, Lauer refused to interview Plaintiff during the pendency of his reconsideration request and may have denied Plaintiff the opportunity to reapply for or, indeed, to receive ADC benefits for an extended time during that period. While it is not altogether clear that such conduct would constitute a deprivation of any of Plaintiff's rights secured by federal statute, a denial of or extended delay in the opportunity for Plaintiff to apply for ADC, or receive same, during the pendency of the reconsideration might constitute a deprivation of due process for which Lauer might be proved responsible. (To the extent that Lauer appears to justify such conduct by the fact that Plaintiff's eligibility was being reconsidered by Rominski *at Plaintiff's behest,* the Court notes that this is contrary to state welfare regulations, in effect at that time, explicitly requiring that "[a]ll parties shall comply with the original hearing decision pending the reconsideration." *Ohio Admin.Code* § 5101: 1–35–08(E) (repealed June 1, 1980, [1979–80] *Ohio Monthly Record* 4–770). Thus, Cennamo's decision would appear to have required that Plaintiff receive ADC during the reconsideration period.)

The Plaintiff and these Defendants are given leave to correct omissions and defects in submissions supporting and opposing these Defendants' motion seeking summary judgment in their favor. For reasons previously set forth, the Court advises the Defendants that should they decline to correct their submissions supporting the motion for summary judgment (within the time set forth in Part VI below), the Court will find that said motion is not well taken and should be overruled.

## V. *MOTIONS DIRECTED TO AMENDMENT OF THE COMPLAINT*

### A. *Plaintiff's Motion for Leave to Amend.*

As previously indicated, Plaintiff has requested leave to amend the Complaint for purposes of:

(1) alleging additional facts concerning unlawful delay or delays between the time at which Plaintiff initially sought to apply for food stamp assistance (November, 1977), the time at which Plaintiff was allowed to apply (December, 1977), and the time at which Plaintiff's application was denied (February, 1978); and (2) adding the MCWD and ODPW as parties-Defendant for participation and concurrence in the conduct of the named individual Defendants, and adding the MCC as party-Defendant for its participation and concurrence in the conduct of the MCWD and ODPW.

The named individual Defendants oppose the granting of leave to amend for purposes of adding the MCWD, ODPW, and MCC as parties, herein, for reason that such amendment "would be futile." It is contended that the parties to be added might only be determined *vicariously* liable under the amended complaint, and that the doctrine of respondeat superior has no application in a civil rights action. Further, it is contended that the MCWD and ODPW can not be held liable in any event because, as state agencies, they are immune from an award of money damages under the Eleventh Amendment. Finally, the Defendants Bassman and Lauer oppose the granting of leave to amend for purposes of alleging delays prior to the initial denial of food stamps for reason that "such substantive changes are prejudicial to [these] defendants."

The Court notes that Plaintiff has not proffered a complete draft of the proposed amended complaint, but has undertaken to describe portions thereof (perhaps verbatim) in memorandum. To the extent that the original complaint and the amendments specified by memorandum together indicate what will be the substance of Plaintiff's claims after amendment, the Court finds that Defendants' stated reasons for opposing leave to amend are not well taken.

▉▉ First, while it is true that 42 U.S.C. § 1983 does not comprehend vicarious liability, primary liability on the part of an employing state subdivision may be found under section 1983 if the employer's approved policies, practices, or customs can be fairly said to have caused the deprivation of constitutional rights brought about by its servant's conduct. *Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). If, as Plaintiff herein appears to allege, the MCWD, ODPW and MCC concurred in unconstitutional conduct by the individual Defendants, such concurrence may be indicative of an impermissible policy or custom which in fact caused the alleged deprivation of Plaintiff's rights.

▉▉ Second, while it is true that the Eleventh Amendment, as judicially construed, precludes an award of damages against state agencies or officials where such award is payable out of the state treasury, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), such prohibition does not extend to injunctive or declaratory relief which is neither retrospective nor monetary in character. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Further, with particular respect to the MCWD, it does not appear that the department exercises its power as a "state agency," as opposed to a "political subdivision," and, therefore, the department may not in any event be entitled to invoke the protections of the Eleventh Amendment. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 400–02, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979); O.R.C. § 329.01 et seq.

Finally, while the proposed amendment does allege *additional* facts suggesting a new and different basis of liability for one or more of the original or additional Defendants, the proposed amendment does not appear to *alter* the original bases for liability or *change* factual allegations with respect thereto. Thus, it does not appear clear how it might be said that leave to amend prejudices any of the Defendants, except by general assertion to that effect.

Since it appears that amendment of the Complaint in the manner set forth in Plaintiff's memorandum would be neither "fu-

tile" nor prejudicial, and since there further appears to be no just reason why such amendment should not be allowed, Plaintiff's motion seeking an Order of Court granting leave to amend the Complaint is well taken and is, therefore, sustained.

### B. *Plaintiff's Motion for Summary Judgment and the Motion to Dismiss by MCC and MCWD.*

▇ Because an amended complaint has not yet been filed (leave to file same having only been presently given), the motion of Plaintiff seeking summary judgment in his favor on the proposed amended complaint, and the motion of the MCC and MCWD seeking dismissal of the proposed amended complaint against them, must each be considered premature. However, as an offer of gratuitous advice, the Court might make the following non-exclusive observations regarding certain matters raised by these motions should they be renewed subsequent to the filing of the amended complaint.

First, regarding the motion of the MCC and MCWD, the Court notes that, excepting objections concerning defects in service and/or personal jurisdiction, the matters raised therein do not differ from those raised by the Defendants Bassman and Lauer in opposition to Plaintiff's motion for leave to amend, considered above (i. e., inapplicability of respondeat superior in civil rights actions, and Eleventh Amendment immunity). For the same reasons that such matters were determined to be insufficient bases for denying leave to amend, they would also be considered inadequate as grounds for dismissal of the MCC and MCWD after joinder by such amendment. It is further assumed that present defects in service or personal jurisdiction will be cured when the amended complaint is filed.

Second, regarding Plaintiff's motion for summary judgment, the Court notes that the supporting documents and attachments thereto have not been properly submitted in accordance with the requirements of FRCP 56. Should the motion be renewed with proper support, the Court might further note on the merits that, because the support for Plaintiff's motion is identical to the larger part of Plaintiff's opposition to the Bassman and Lauer motion for summary judgment (the larger part of said opposition being, in fact, *a copy* of Plaintiff's summary judgment motion, memorandum and supporting documents), the observations made and tentative conclusions reached (on the present record) in connection with the Bassman and Lauer motion for judgment would be equally applicable to many aspects of Plaintiff's motion for judgment. In other words, at least concerning those matters within the scope of the unamended Complaint, it appears that there are issues of fact which are material to the determination of the *nonliability* of Bassman and Lauer (i. e., precluding summary judgment in their favor) as well as with respect to the determination of their *liability* (i. e., precluding summary judgment against them).

Third, also regarding Plaintiff's motion for summary judgment, the Court would find no matters pleaded in the amended complaint or raised by Plaintiff's motion for judgment thereon, which would alter the conclusion reached above (in connection with the Kreachbaum and Cennamo motion to dismiss) that, as a matter of law, the Defendant state hearing officers cannot be found liable.

Finally, to the extent that the Plaintiff may renew his motion for summary judgment with respect to new matters raised by the amended complaint (i. e., delay prior to the denial of food stamps, and misconduct by the parties to be added), the Court notes that there has been no direct response to the substantive bases for potential liability on such matters. Instead, the individual Defendants have chosen, in response to Plaintiff's motion, only to reassert the contentions (tentatively rejected above) that Plaintiff has not exhausted his remedies, and that each Defendant's pre- and post-appeal conduct clearly conformed to the requirements of the law. While ineffective, such response is not improper since, as Defendants point out, new matters in the amended complaint will not be properly before the Court until the amended complaint

is filed. Accordingly, since the merits of the new matters are not yet at issue, since the Defendants have properly refrained from suggesting the bases they may have for opposing judgment thereon, and, further, since much of the new matter may concern the potential liability of parties not yet joined, the Court deems it appropriate to refrain from expressing any opinion on the merits of the Plaintiff's claims regarding such matters.

## VI. *CONCLUSION*

In summary, based on the aforestated reasons the Court finds that:

(1) jurisdiction over Plaintiff's cause, herein, is proper pursuant to 28 U.S.C. § 1343(3) and the doctrine of pendent jurisdiction;

(2) the motion of Defendants Kreachbaum and Cennamo, seeking an Order of the Court dismissing the Complaint (as unamended) against them, is well taken and is therefore, sustained. The Defendants Kreachbaum and Cennamo are thus dismissed as party Defendants to this lawsuit;

(3) the motion of the Defendants Bassman and Lauer seeking an Order of the Court entering summary judgment in their favor on the Complaint (as unamended) is held in abeyance pending submission of omitted exhibits;

(4) the motion of the Defendants Bassman and Lauer seeking an Order of the Court striking Plaintiff's "amendment to memorandum" is not well taken and is, therefore, overruled;

(5) Plaintiff and the Defendants Bassman and Lauer are presently given leave to correct omissions and defects in their support and opposition to the motion for summary judgment by these Defendants. Said parties are given 14 days from date of receipt of this decision to file said supporting and opposing documentation in the form set forth by F.R.C.P. 56;

(6) Plaintiff's motion seeking an Order of Court granting leave to amend the Complaint is well taken and is, therefore, sustained. Plaintiff's amended complaint must be filed within 14 days from date of receipt of this decision; and

(7) No ruling will be made on Plaintiff's motion seeking an Order of Court entering summary judgment in his favor on the proposed amended complaint, or made on the motion of the MCC and MCWD seeking an Order of Court dismissing the proposed amended complaint against them, for reason that each of said motions is premature.

(8) Counsel, William Wolff, Sr., and the Plaintiff listed below will take note that a further pretrial conference will take place, in this Court's chambers, on Friday, June 26, 1981, at 8:40 a. m., for the purposes of, *inter alia*, setting a new trial date, final pretrial date, cut off date for discovery, the filing of motions, etc. Counsel Arnett need not appear in chambers for such pretrial, but need only wait by his telephone at the appointed hour.